UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHICO'S FAS, INC., a Florida corporation,

        Plaintiff,

v.                                          Case No:  2:13-cv-792-FtM-38DNF

1654754 ONTARIO, INC., d/b/a Wink
Intimates, a Canadian corporation,
ANDREA CLAIR, a Canadian individual,
and ANASTASIOS KOSKINAS, a
Canadian individual,

        Defendants.

_____

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT

This cause is before the Court on Plaintiff Chico's FAS, Inc.'s Motion for Claim Construction (Doc. 34) filed on July 16, 2014.  Defendants 1654754 Ontario, Inc. d/b/a Wink Intimates ("Wink"), Andrea Clair, and Anastasios Koskinas (collectively, "Defendants") filed a Response to Plaintiff's Claim Construction Brief (Doc. 38) on August 6, 2014.  This matter was referred to the undersigned on July 17, 2014, for a report and recommendation on the claim construction issues.

### I.      Background

This is a patent infringement case.  Plaintiff is a specialty retailer of women's apparel, accessories, and related products, including women's intimate apparel sold under the brand Soma Intimates.  Among the products sold under the Soma Intimates brand is the Oh My Gorgeous collection of camisole bras.  Plaintiff is seeking declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that its Oh My Gorgeous collection of camisole bras has not infringed Defendants'

patents, and that Defendants patents are invalid pursuant to the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. §§ 101 *et seq.*) (Doc. 28 ¶ 5). The patents at issue are U.S. Patent Nos. 8,506,347 (the "'347 Patent); 8,182,310 (the "'310 Patent"); and D622,478 ("'478 Design Patent") (collectively the Patents-in-Suit). Each of the Patents-in-Suit are entitled "Combination Brassiere and Tank Top."

On September 4, 2013, counsel for Wink sent Plaintiff a letter alleging that Plaintiff's Oh My Gorgeous collection of camisole bras infringed on the Patent-in-Suit, and that Wink would be taking any means necessary to protect its patents. In response, Chico's brought the instant declaratory action.

The operative complaint is Plaintiff's Third Amended Complaint (Doc. 61) which was filed on February 10, 2015. The Third Amended Complaint has three counts: Declaratory Judgment of Non-Infringement of the Patents-in-Suit (count one), Declaratory Judgment of Invalidity of the Patents-in-Suit (count two), and Declaratory Judgment of Unenforceability of the Patents-in-Suit (count three).

As of the date of this Report and Recommendation, Defendants have not yet filed an answer to the Third Amended Complaint. Defendant's Amended Answer, Affirmative Defenses, and Counterclaim (Doc. 51), filed on September 18, 2014, in response to Plaintiff's Second Amended Complaint, contained three counterclaims, a count of infringement for the '347 Patent, '310 Patent, and the '478 Design Patent, respectively.

## II.    Legal Framework for Claims Construction

The court and not the jury has the responsibility to construe or interpret disputed terms in patent claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the

patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005)· *citing, Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). The words of the claim are generally given their ordinary and customary meaning. *Phillips v. AWH Corporation*, 415 F.3d at 1312, *See also, Biogen IDEC, Inc. v. Glaxosmithkline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013)(citing *Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1334 (Fed. Cir. 2009)). "We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Id*. at 1313, *See also, Thorner v. Sony Computer Entertainment Am.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). How a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin a claim interpretation. *Id*. Inventors typically are persons skilled in the field of inventing and the language in the patents is addressed to others who are also skilled in the pertinent field or art. *Id*. A person of ordinary skill in the field is deemed to read the terms in the claim in the context of the entire patent including the specification. *Id*. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id* at 1314. Then, general dictionaries may be helpful. *Id*. When the terms of the claim are not readily apparent and have a particular meaning in a field or art, then the Court must look to the intrinsic evidence of the words of the claims themselves, the remainder of the specification, the prosecution history, and then look to the extrinsic evidence of the scientific principles, the meaning of technical terms, and the state of the art. *Id*.

### A.   Claim Language and Specification (Intrinsic Evidence)

The claim itself provides substantial guidance in determining the meaning of the language. *Phillips v. AWH Corporation*, 415 F.3d at 1314.  A court should look to the context of the term. *Id*.  A court should also review the other claims of the patent to determine the meaning of the language in the claim.  *Id*.  Claims must also be read in view of the specification.  *Id* at 1315-16. A specification may provide a special definition for a claim term that differs from its general meaning, and in such cases the "inventor's lexicography governs."  *Id*. at 1316.  The language in the specification, however does not "'import limitations from the specification into the claims.'" *Varco, L.P. v. Pason Systems USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006), (quoting *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005)).  Claims may not be broader in scope than the invention that is set forth in the specification.  *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006).  It is necessary to consider the specification as a whole and to read all of the portions of the written description so that the patent as a whole is internally consistent.  *Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005).

A claim term may be more narrowly construed than its ordinary meaning in two instances: "1) when a patentee sets out a definition and acts as [its] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." (internal quotation marks omitted) *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) (quoting *Thorner v. Sony Computer Entertainment Am. L.L.C.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). A patentee acts as its own lexicographer when the patentee sets forth a definition of a disputed claim term giving it "other than its plain and ordinary meaning." (internal quotation marks omitted) *Id*. (citing *Thorner v. Sony Computer Entertainment Am. L.L.C.*, 669 F.3d 1362, 1365

(Fed. Cir. 2012)(quoting *CCS Fitness, Inc. v. Brunswick Corp*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "Similarly, to disavow claim scope, '[t]he patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of the claim scope.'" *Id*. citing *Thorner*, 669 F.3d at 1366 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1325 (Fed. Cir. 2002)).

It is generally impermissible to limit a claim to a preferred embodiment or to any inferences drawn from the description of the preferred embodiment.  *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001).  Even if the specification describes a very specific embodiment, the claims are not confined to the embodiment described.  *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373, 1377 (Fed. Cir. 2006). "In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id*., (citing *Gemstar-TV Guide v. Int'l Trade Comm'n*, 383 F.3d 1352, 1366 (Fed. Cir. 2004)), *See also*, *Kapusta v. Gale Corp.*, 155 F. App'x 518 (Fed. Cir. 2005).

"To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips v. AWH Corporation*, 415 F.3d at 1323.  Although the task to determine if the preferred embodiment is the outer limit of the claim or merely an example of the invention may be difficult, the Federal Circuit has found that "attempting to resolve that problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiments disclosed in the specification or divorcing the claim language

from the specification." *Id.* "Nonetheless, absent a clear disclaimer in the specification, the embodiments in the specification do not limit broader claim language." *Eolas Technologies Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336 (Fed. Cir. 2005)(citing *Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 807-08 (Fed. Cir. 2004)). Even if the only embodiment or all of the embodiments contain a certain limitation, a court cannot read this limitation into the claim. *Thorner v. Sony Computer Entertainment Amer. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012).

**B. Prosecution History (Intrinsic Evidence)**

The prosecution history which is the complete record of the proceedings before the Patent and Trademark Office is considered part of the "intrinsic evidence" for claim construction purposes. *Phillips v. AWH Corporation*, 415 F.3d at 1317. The prosecution history shows how the inventor and the Patent and Trademark Office understood the patent. *Id*. The prosecution history is generally less useful than the specification because it is the ongoing negotiations of the applicant and the Patent and Trademark Office and lacks the clarity of the specification. *Id*. "Disclaimers based on disavowing actions or statements during prosecution, however, must be both clear and unmistakable." *Sorensen v. International Trade Commission*, 427 F.3d 1375, 1379-80 (Fed. Cir. 2005), (citing *Omega Eng'g. Inc. v. Raytek Corp.,* 334 F.3d 1314, 1326 (Fed. Cir. 2003)). Further, it is the applicant and not the examiner who must "'give up or disclaim subject matter'" that would otherwise be included within the scope of the claim. *Sorensen*, 427 F.3d at 1380, (quoting *Innova/Pure Water, Inc.,* 381 F.3d at 1124). The statement of an examiner alone will not necessarily limit a claim. *Bell Atlantic Network Services, Inc. v. Covad Commc'ns Group, Inc.* 262 F.3d 1258, 1273 (Fed. Cir. 2001).

## C.  Dictionaries, Treatises (Extrinsic Evidence)

Extrinsic evidence is less significant and less reliable than intrinsic evidence.  *Phillips v. AWH Corporation*, 415 F.3d at 1317, 1318.   Dictionaries and treatises, especially technical dictionaries, may be helpful and technical dictionaries may help the court with technical terms.  *Id*. at 1318.

### III.     Claim Construction of Disputed Claims

### A.  Utility Patents

In this case, the parties are in dispute as to the construction of only one term in the '347 Patent and the '310 Patent, the term "foam cup".[1]   The parties' respective constructions are:

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "Portion of the bra that fits over at least a portion of the breast and is shaped or lined with gel or foam, including polyester foam, polyurethane foam, or polyester foam fibers" | "Portion of the bra that fits over at least a portion of the breast and is shaped or lined with foam or gel" |

(Doc. 34 p. 8; Doc. 38 p. 7).  The only difference between the parties' respective constructions is that Plaintiff wants to include specific examples of the type of foam that could be used.

Plaintiff argues that its construction is not a limitation of the term "foam cup," but that it will ensure the jury will recognize that a variety of materials have been used for padding in bras, and that claims containing the term "foam cups" are understood by those of ordinary skill in the art to encompass all types of foam in distinguishing between "soft cups" and padded or foam cups. (Doc. 34 p. 9-10).  Plaintiff argues that specifying the type of foam in the patent is consistent with

---

[1]  The parties originally identified the term "molded" as a term for claim construction, but Defendants have since agreed to Plaintiff's proposed construction. See (Doc. 38 p. 2).

numerous other bra patents in which the type of foam is described. (Doc. 34 p. 11).  Plaintiff cites

to the declaration of Donna Mines, an employee of Plaintiff, who states that a person of ordinary

skill in the art would recognize that a "foam cup" can be comprised of polyurethane foam or

polyester foam or foam fibers. (Doc. 34 p. 10).

Defendants argue that the additional language Plaintiff seeks to add is unnecessary as it

does not resolve any dispute between the parties. (Doc. 38 p. 7).  Defendants contend that the list

of types of foam is not exhaustive, and the inclusion of such examples will create more disputes

during expert discovery and more questions for the finder of fact to resolve. (Doc. 38 p. 7).

Defendants argue that there is no reason why the claim construction should include three examples

of types of foam. (Doc. 38 p. 8).  Defendants note that Plaintiff's expert, Ms. Mines, does not offer

a definition of "foam" or explain why the Court should include examples of foam in its

construction.  Defendants conclude that whether a particular material is a "foam" is a question of

fact particularly suitable for expert discovery. (Doc. 38 p. 10).

As an initial matter, the Court finds it unnecessary to hold a *Markman* hearing.  "A

Markman hearing is not necessary 'where the technology is accessible to the court and the claims

are relatively straightforward.'" *H2Ocean, Inc. v. Schmitt*, 2007 WL 2376233, at *3 n. 3 (N.D. Fla.

Aug. 15, 2007) (citing *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 2001 WL 204775, at *1-2 (N.D.

Tex. Feb. 27, 2001)).  Here, the only issue as to the construction of "foam cup" is whether the

Court should include the examples of foam as requested by the Plaintiff.  Given this very precise

and non-technical issue, the Court will dispense with holding a *Markman* hearing.

The Court will construe "foam cup" as Defendants propose: "Portion of the bra that fits

over at least a portion of the breast and is shaped or lined with foam or gel."  As Defendants

correctly note, Plaintiff has failed to provide any intrinsic or extrinsic evidence supporting its

proposed construction besides the testimony of its employee, Ms. Mines. In her declaration Ms. Mines provided that "[b]ased on my experience and a review of the patents-in-suit, it is my opinion that the term 'foam cup' is the portion of the bra that fits over at least a portion of the breast and is shaped or lined with gel or foam, and that the foam includes, but is not limited to, polyester foam, polyurethane foam or polyester foam fibers." (Doc. 34-2 p. 9). This declaration, however, is the type of conclusory assertion not useful in claim construction. *Phillips*, 415 F.3d at 1318 (providing that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court"). Plaintiff's desire to provide three examples of the materials that could be used is unnecessary and would needlessly increase the possibility of confusion by a jury as to the reasons the examples listed by Plaintiff are singled out. For these reasons, the Court rejects the inclusion of three examples of materials foam can be made from in its construction of "foam cup."

### B. Design Patent

Plaintiff argues that the Court need not construe the terms of the '478 Design Patent, as it is primarily functional, and is therefore invalid. (Doc. 34 p. 13-14). Defendants responds that the issue of the validity of the '478 Design Patent should not be decided in a *Markman* brief. (Doc. 38 p. 12). Defendants' position is that claim construction is not necessary for the '478 Design Patent, but if the Court finds it advisable to construe the '478 Design Patent, then the Court should wait until the parties have taken expert discovery on the complex issue of the functionality of features in the patent. (Doc. 38 p. 11).

Plaintiff and Defendants have each provided a proposed construction of the '478 Design Patent in the event the Court chooses to construe the patent. Their proposed constructions are:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "A garment with the appearance shown in Figures 1 and 2, but excluding the underwire and cups depicted in Figure 1, which are purely functional and shall not be considered" | "The claimed design is a combination bra and tank top and additional elements or features, as shown in the '478 patent drawings.  Whatever functional role may be played by an element or feature of the combination bra and tank top pictured in the drawings is not a part of the claim, and should therefore be disregarded; but the design of those same elements or features is a part of the claim" |

For context, the two figures making up the '478 Design Patent are below:

Figure 1: rear view



FIG. 1

Figure 2: front view



FIG. 2

The approach to claim construction for design patents is different than for utility patents. Although district courts may verbally construe a design patent claim, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). Verbally construing a design patent claim risks unduly emphasizing "particular features of the design" and focusing on "each individually described feature in the verbal description rather than on the design as a whole." *Id.* at 679-80. Nevertheless, it may be helpful to construe a design claim to distinguish between those features of the claimed design that are ornamental and those that are purely functional. *Id.* at 680 (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

In this case, the Court finds it appropriate to defer consideration of the issue of claim construction of the '478 Design Patent at this time. While it may be helpful in this case to construe the '478 Design Patent to distinguish between those features of the claimed design that are ornamtental and those that are purely functional, claim construction would be better served after the parties have taken discovery and obtained expert reports on the issue of the functional and

ornamental features of the patent.  The Court recommends that the parties be allowed to directly brief the issue of the appropriateness of claim construction with the benefit of discovery and expert reports.

**IT IS RESPECTFULLY RECOMMENDED THAT:**

1)  The District Court adopt the following construction of "foam cup": "Portion of the bra that fits over at least a portion of the breast and is shaped or lined with foam or gel."

2)  The District Court defer construction of the '478 Design Patent until the parties brief the issue of the appropriateness of claim construction with the benefit of discovery and expert reports.

**Respectfully recommended** in Chambers in Fort Myers, Florida on February 19, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02

Copies furnished to:

Counsel of Record
Unrepresented Parties