**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

CHICO'S FAS, INC., a Florida
Corporation,

       Plaintiff,

vs.

1654754 ONTARIO, INC. d/b/a WINK
INTIMATES, a Canadian corporation,
ANDREA    CLAIR,    a    Canadian
individual,    and    ANASTASIOS
KOSKINAS, a Canadian individual,

       Defendants.

_____/

Case No.: 2:13-cv-00792-SPC-DNF

Hon. Sheri Polster Chappell

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Defendants 1654754 Ontario, Inc. d/b/a Wink Intimates ("Wink"), Andrea Clair, and

Anastasios Koskinas (collectively, "Defendants"), by and through undersigned counsel, and

pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move for partial summary

judgment against Plaintiff Chico's FAS, Inc. ("Chico") on three separate grounds involving

claims at issue in this action: 1) The patents-in-suit are not unenforceable due to inequitable

conduct; 2) The patents-in-suit are not invalid over the alleged prior art; and, 3) Chico's accused

products literally infringe U.S. Patent Nos. 8,506,347 and 8,182,310; or, alternatively that Chico's

accused products literally infringe U.S. Patent Nos. 8,506,347.   In support of this Motion,

Defendants state as follows:

## I.     Nature and Stage of Proceedings

This is a patent infringement litigation brought as a claim for declaratory judgment of non-infringement, invalidity and inequitable conduct under 28 U.S.C §§ 2201 and 2202 by Plaintiff Chico. Defendants brought counterclaims of infringement by Chico's of U.S. Patent Nos. 8,506,347; 8,182,310 and D622,478 (collectively "the patents-in-suit"). The parties have completed fact and expert discovery.

## II.    Summary of Arguments

This consolidated Motion presents three separate grounds for partial summary judgment involving the claims at issue in the case.

1) The patents-in-suit are not unenforceable due to inequitable conduct.

2) The patents-in-suit are not invalid over the alleged prior art.

3) Chico's accused products literally infringe U.S. Patent Nos. 8,506,347 and 8,182,310; or, alternatively that Chico's accused products literally infringe U.S. Patent Nos. 8,506,347.

## III.   Plaintiff Has No Evidence Of An Intent To Deceive the Patent Office By The Inventors And Therefore Plaintiff Cannot Make a Case of Inequitable Conduct.

Plaintiff has no evidence at all of an intent to deceive the patent office on the part of the inventors Andrea Clair and Anastasios Koskinas. Plaintiff contends that contractor Beverly Johnson was an inventor and that the named inventors intentionally excluded Ms. Johnson as an inventor on the patents-in-suit. While Defendants deny that Ms. Johnson is an inventor, even if it is determined that she is, Plaintiffs have not a *scintilla* of evidence that the named inventors: 1) knew Ms. Johnson was an inventor; and 2) intentionally omitted that information from the application in order to deceive the USPTO on the issue of inventorship. Tellingly, even the alleged omitted inventor, Ms. Johnson, denies that she is an inventor or that the application was kept a secret from her.

A.    **Statement of Facts**

1.      On March 31, 2008, U.S. Patent Application No. 29/300,471 ("the '471 Application") was filed naming Andrea T. Clair and Anastasios Koskinas as inventors. This application was filed by Andrea Clair *pro se* and issued as U.S. Patent No. D622,478 ("the '478 Patent") on August 31, 2010.[1]

2.      On July 6, 2009, U.S. Patent Application No. 12/498,136 ("the '136 Application") was filed as a continuation application of the '471 Application and naming Andrea T. Clair and Anastasios Koskinas as the inventors and issued as U.S. Patent No. 8,182,310 ("the '310 Patent") on May 22, 2012.[2]

3.      On March 12, 2012, U.S. Patent Application No. 13/417,844 ("the '844 Application") was filed as a continuation of the '136 Application naming Andrea T. Clair and Anastasios Koskinas ("the named inventors") as the inventors and issued as U.S. Patent No. 8,506,347 ("the '347 Patent") on August 13, 2013.[3]

4.      On February 10, 2015, Plaintiff Chico's FAS, Inc.'s, Third Amended Complaint was filed including Count Three, which seeks a Declaratory Judgment of Unenforceability of the patents-in-suit due to inequitable conduct.[4] Specifically, Plaintiff alleges that: (a) Ms. Beverly Johnson is an inventor of the patents-in-suit; (b) Mr. Koskinas is not an inventor of the patents-in-suit; and, (c) the named inventors committed inequitable conduct by: (i) informing the USPTO that Mr. Koskinas was an inventor of the patents-in-suit and (ii) not informing the USPTO that Ms. Johnson was an inventor of the patents-in-suit.[5]

---

[1] D.I. 61, ¶ 17, Exh. B.
[2] D.I. 61, ¶ 18, Exh. C.
[3] D.I. 61, ¶ 19, Exh. D.
[4] D.I. 61, ¶¶ 37- 49.
[5] *Id.*

5.      Neither the inventors nor Beverly Johnson believed Ms. Johnson to be an inventor of the invention claimed in the patents-in-suit; not now or at the time of the filing.[6]

**B.      Legal Standard**

1)      Standard Of Review For Summary Judgment

Summary judgment is appropriate when the moving party can show by "depositions, documents, electronically stored information, affidavits or declarations, stipulations [ ] admissions, interrogatory answers, or other materials" . . . "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A "genuine dispute" is "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Fernandez v. Jones*, 653 F. Supp. 2d 22, 27 (D.D.C. 2009) (citing *Celotex*, 477 U.S. at 322). Moreover, "material" facts are determined by analyzing the substantive law of each count or claim. *Fernandez*, 653 F. Supp. 2d at 27.

Under Rule 56, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp*, 477 U.S. at 323. The burden of proof required to satisfy the summary judgment standard rests with the moving party who bears the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Hairston v. Gainesville Sun Pub'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

Once the burden of proof has been shifted to the non-movant, "the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact

---

[6] Casieri Decl. Exh. A (Johnson Dep. at 170:13-171:23).

through mere speculation or compilation of inferences." *Allied Pilots Ass'n v. Am Airlines, Inc.*, 643 F. Supp. 2d 123, 126 (D.D.C. 2009) (internal citations omitted). "A nonmoving party [ ] must establish more than 'the mere existence of a scintilla of evidence' in support of its position." *Fernandez,* 653 F. Supp.2d at 28. "The nonmoving party may not rely solely on allegations or conclusory statements. Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. If the evidence 'is merely colorable' or is not significantly probative, summary judgment may be granted." *Id*. at. 28. (citations omitted).

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, 'the moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (U.S. 1990) citing *Celotex*, 477 U.S. at 322-23; *Fernandez*, 653 F. Supp. 2d at 27.

2)     The Law Regarding Inventorship

"Inventorship is a question of law." *Nartron Corp. v. Schukra U.S.A., Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009). "The inventors as named in an issued patent are presumed to be correct." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997). "The burden of showing mis-joinder or non-joinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Id.* An inventor is the person that conceived the claimed invention. *Hoop v. Hoop*, 279 F.3d 1004, (Fed. Cir. 2002). An alleged co-inventor has a high evidentiary burden in proving corroboration of his or her alleged inventive contribution. *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004). "The

4

conception of an entire device may be due to one person, but if the other person makes suggestions of practical value, which consist in working out the main idea and making it operative, or contributes an independent part of the entire invention, which is united with the parts produced by the other and creates the whole, he is a joint inventor . . .." *Jamesbury Corp. v. United States*, 207 Ct. Cl. 516, 537 (Ct. Cl. 1975). "But an inventor need not know that his invention will work for conception to be complete. He need only show that he had the idea; the discovery that an invention actually works is part of its reduction to practice." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citations omitted). "An inventor 'may use the services, ideas and aid of others in the process of perfecting his invention without losing his right to a patent.'" *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (citations omitted). "[T]he basic exercise of ordinary skill in the art, without an inventive act, does not make one a joint inventor." *Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002). "Moreover, to the extent that fewer than the true inventors are named on a patent, the patent may be corrected to so reflect as long as the nonjoinder was done without deceptive intent on the part of the person erroneously left off the patent." *Id.*, at 1301. The standard of inventorship is the same for both design patents and utility patents. *Hoop*, 279 F.3d 1004, 1007 (Fed. Cir. 2002).

### 3)   The Law Regarding Inequitable Conduct

"Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318. (Fed. Cir. 2000) (citations omitted). A claim of inequitable conduct is entirely equitable in nature and decided by the judge and not a jury. *Id.* "Determination of inequitable conduct requires a two-step analysis. First, the trial court must determine whether the conduct meets a threshold level of

materiality. The trial court must then also determine whether the evidence shows a threshold level of intent to mislead the PTO." *Id.*, 1318-19. The "doctrine of inequitable conduct requires 'conduct sufficient to support an inference of culpable intent.'" *Ristvedt-Johnson, Inc. v. Brandt, Inc.*, 805 F. Sup. 549, 533 (N.D. Ill 1992). "A district court may not draw an inference of bad faith when a party has plausible reasons for withholding information: mere intent to withhold does not support an inference of intent to deceive." *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 829 (Fed. Cir. 2010). While intent may be inferred from indirect and circumstantial evidence, "the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008). A "good faith disagreement over the law of joint inventorship does not provide the basis for this [inequitable conduct] ruling." *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1576 (Fed. Cir. 1996). Moreover, "[w]hen an alleged omitted co-inventor does not claim to be [a co-inventor], it can hardly be inequitable conduct not to identify that person to the PTO as an inventor." *Pro-Mold and Tool Co.*, 75 F.3d at 1576.

**C.    The Named Inventors Did Not Have, And Plaintiff Cannot Show, An Essential Element Of Its Claim: An Intent To Deceive**

"The habit of charging inequitable conduct in almost every major patent case has [been] an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). Based on its pleading, Plaintiff appear to believe that it need only to raise the possibility that inventors got the inventorship incorrect in order to make the very serious allegation of fraud against Defendants. Plaintiff does not cite a single fact to support an allegation of intent to

6

deceive except its own "information and belief". For this reason alone,[7] the Court should grant Summary Judgment in favor of Defendants.

"The exact parameters of what constitutes joint inventorship are quite difficult to define. It is one of the muddiest concepts in the muddy metaphysics of the patent law." *Jamesbury Corp. v. United States*, 518 F.2d 1384, 1396 (Ct. Cl. 1975). When the named inventors filed the '471 Application in 2008, they did so without the benefit of being represented by an attorney. To the extent a mistake was made on the issue of inventorship (which Defendants deny) it is most likely that the mistake was not based on some intent to deceive but rather on the fact that the determination of inventorship is a difficult concept as the facts of this case illustrate.

Clair initially conceived of the invention and shortly thereafter, she explained it to Mr. Koskinas.[8] [9] Ms. Clair and Mr. Koskinas then worked together on the invention for years prior to engaging the alleged missing inventor Ms. Johnson.[10] After having worked together on the invention for years, it was natural and expected for Ms. Clair and Mr. Koskinas to believe they were joint inventors of the invention. Regardless of the true inventorship, the named inventor's good faith belief that they were joint inventors provides a basis for denying a claim of inequitable conduct. *Pro-Mold and Tool Co.* 75 F.3d at 1576.

In this instance the named inventors engaged Ms. Johnson to assist them, at their direction, in reducing the invention to practice.[11] However, neither of the named inventors

---

[7] Defendants deny that Ms. Johnson is an inventor or that the inventorship is incorrect in any way.  Assuming *arguendo* that Plaintiff has some evidence that the inventorship is incorrect, it is different and distinct from having evidence of an intent to deceive.  Plaintiff has no evidence of an intent to deceive.
[8] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 4-5); Exh. E (Declaration of Anastasios Koskinas ¶ 4).
[9] Defendants do not know Plaintiff's contention as to what facts Plaintiffs dispute other than the bare bones pleading contained in Plaintiff's Third Amended Complaint.
[10] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 6-7); Exh. E (Declaration of Anastasios Koskinas ¶ 5)
[11] Casieri Decl. Exh. A (Johnson Dep. at 41:19-43:15); Casieri Decl. Exh. B (Johnson Dep, Exh. 38); Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 9-14) .

believed then or now that Ms. Johnson contributed to the conception of the invention.[12] Rather, the named inventors believed that Ms. Johnson assisted them as one of ordinary skill would and that Ms. Johnson was not an inventor.[13] Perhaps most tellingly, Ms. Johnson did not believe there was an invention and she certainly did not believe she was an inventor.

> Q.· ·I'm just trying to understand what it is that you told her and that she told you; okay?· I'm trying target at the conversation that you had with her, and so I'm asking you, did you inquire as to whether -- did you in any way indicate to her that you thought you should be an inventor?
> A.· ·No.
> Q.· ·Did you ask to see the patent application before it got filed?
> A.· ·No.
> Q.· ·And you provided -- the drawings that were attached to this e-mail, you provided them to Andréa Clair; correct?
> A.· ·Yes.
> Q.· ·And you knew they were going to be used for appetent application; correct?
> A.· ·Yes.

Johnson Dep. at 171:5-23.

Ms. Johnson's knowledge of the application coupled with the belief that she was not a co-inventor[14] further demonstrates the implausibility that the named inventors committed inequitable conduct. *Pro-Mold and Tool Co.*, 75 F.3d at 1576. None of the concerned parties believe there was a mistake in inventorship except Plaintiff.[15]

If ultimately it is determined a mistake on inventorship was made, the most reasonable inference is that the named inventors didn't understand the "law of inventorship" and made a mistake in determining who the correct inventor or inventor(s) was. To the extent there was a "mistake" it was honest as the facts clearly illustrate. More to the point, the facts fail to show, by

---

[12] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 14, 17-30); Exh. E (Declaration of Anastasios Koskinas ¶ 8, 11-24)
[13] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 19, 12-13); Exh. E (Declaration of Anastasios Koskinas ¶ 8)
[14] Ms. Johnson's testimony that she believed there was no invention does not change the fact that she did not believe she was an inventor and does not change the fact that Ms. Johnson never expressed to the named inventors that she thought she should be an inventor.
[15] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 14-37); Exh. E (Declaration of Anastasios Koskinas ¶ 8-24)

clear and convincing evidence, that the named inventors had an intent to deceive the PTO. Both of the named inventors have stated neither of them had an intent to deceive the PTO.[16]

Similarly, both of the named inventors have stated that, if there was a mistake made by including Mr. Koskinas as an inventor, the mistake was made without intent.[17]

Finally, Ms. Johnson had signed a Non-Disclosure/Non-Compete Agreement in which she specifically agreed that "Beverly Johnson shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any item or product, containing, based upon or derived from the information [received from Wink Intimates] except as may be expressly agreed to in writing by Wink Intimates by Andrea Clair."[18]  In other words, since Ms. Johnson had contractually agreed that she did not acquire any rights to the invention; even if the named inventors believed that Ms. Johnson was an inventor, there was no reason to omit her name as an inventor because she owned no rights to the invention.

## IV. Plaintiff Cannot Prove that the Patents-In-Suit are Invalid By Clear and Convincing Evidence

### A. Statement of Facts

1.    Plaintiff contends that the patents-in-suit are invalid as anticipated by or obvious over the prior art or that the '478 patent is functional.[19]

2.    Plaintiff has identified only two witnesses that allegedly have information pertaining to Plaintiff's claims of invalidity: Joyce Baran and Donna Mines.[20]

3.    In answer to Defendants' Interrogatory concerning Chico's intention to call an employee of Chico's or one of its affiliates to provide expert testimony at trial, Chico's

---

[16] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 31-32); Exh. E (Declaration of Anastasios Koskinas ¶ 25-26)
[17] Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 33-37); Exh. E (Declaration of Anastasios Koskinas ¶ 27-31)
[18] Casieri Decl. Exh. C (WNK 005988-WNK005990, p. 2 at ¶ 4); Casieri Decl. Exh. D (Declaration of Andrea Clair ¶¶ 10-11).
[19] D.I. 61 ¶¶ 31- 36; Plaintiffs' Invalidity Contentions.
[20] Casieri Decl. Exh. F (Plaintiff Chico's Fas, Inc's Supplemental Rule 26 Disclosures, dated February 9, 2015).

responded that it would not make a disclosure under Rule 26 (a)(2)(C) until November 12, 2014.[21] Chico's further responded that they expected to rely upon the testimony of Donna Mines with respect to claim construction and the opinions in her declaration.[22]

4.      Ms. Mines's declaration, submitted in support of Plaintiff's claim construction brief however, does not address the validity of the patents-in-suit.[23] Ms. Mines, now a former employee of Plaintiff, is identified as having, "information supporting Chico's claims and defenses; knowledge as to the accused products; knowledge of the prior art."[24] Ms. Mines's declaration contains no opinions concerning the validity of the patents[25] and she had not formed an opinion as to the validity of any claims of the patents.[26]

5.      Ms. Mines's declaration contains opinions on the functional nature of bras.[27] Ms. Mines's opinion does not support the contention that the '478 design patent is invalid as functional.[28]

6.      Chico's did not identify any employee under Rule 26 (a)(2)(C).

7.      Chico's objected to producing a corporate designee to testify specifically concerning the basis of Chico's invalidity contentions. In its Notice of Deposition under Rule 30(b)(6), Defendants identified a number of topics concerning the issue of invalidity.[29] Chico's objected to these topics stating "Chico's is unaware of what counsel will rely upon or use to

---

[21] Casieri Decl. Exh. G (Plaintiff's Answers to Defendant's Third Set of Interrogatories (No 12-15), dated July 30, 2015, No. 15).
[22] *Id*.
[23] Casieri Decl. Exh. H (Declaration of Donna Mines Regarding Plaintiff's Motion For Claim Construction, dated July 11, 2014).
[24] Casieri Decl. Exh. F (Plaintiff Chico's Fas, Inc's Supplemental Rule 26 Disclosures, dated February 9, 2015)
[25] Casieri Decl. Exh. H (Declaration of Donna Mines Regarding Plaintiff's Motion For Claim Construction, dated July 11, 2014).
[26] Casieri Decl. Exh. I (Mines Dep. at 87).
[27] Casieri Decl. Exh. H (Declaration of Donna Mines Regarding Plaintiff's Motion For Claim Construction, dated July 11, 2014, ¶ 18).
[28] Casieri Decl. I (Mines Dep. at 62-63, 79, 81- 87).
[29] Casieri Decl. Exh. J (Defendants' Amended Notice Of Deposition Of Plaintiff Pursuant To Rule 30(B)(6), dated Oct. 27, 2014, topics 18, 19, and 27).

support any particular claim. Such information will ultimately be up to the litigation strategy of counsel and expert witnesses. Chico's will produce a representative who is generally familiar with the positions taken by counsel in this case, but will not offer insight into the basis for such positions or disclose privileged communications."[30]

### Utility Patents

8.      Ms. Baran, Plaintiff's alleged technical expert, submitted invalidity opinions in a report titled "Initial Expert Report Of Joyce Baran." Ms. Baran admits to using a broader, and in her opinion, incorrect claim interpretation for the claims in her expert report on invalidity. Ms. Baran did this with multiple claim elements affecting each independent claim involved in the case.[31]

9.      Ms. Baran relied on 30 primary references in her initial and supplement reports.[32] Ms. Baran admitted that some references were more relevant and that others were less relevant.[33]

### Design Patent

10.     Ms. Baran identified a variety of allegedly distinguishing features between the accused product and the claimed design, yet ignored or discounted those same features in the allegedly invalidating prior art.[34]

### B.     Legal Standard

A patent is presumed valid. 35 U.S.C. § 282. In an infringement action, it is not a patent owner's burden of going forward with proof of its case to submit evidence supporting validity.

---

[30] Casieri Decl. Exh. J (Chico's Fas, Inc.'s Amended Objections To 1654754 Ontario, Inc. D/B/A Wink Intimates; Andrea Clair, And Anastasios Koskinas Amended Notice Of Deposition, dated Nov. 17, 2014).
[31] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter Exhibits 2-5 at footnotes 5-6);  Casieri Decl. Exh. M ( Baran Dep. 220;10- 223: 21;  226:11- 230:25; 231:21-234:7;  236:12-244:5; 38:3- 39:8; and 51:11-52:16.
[32] Casieri Decl. Exh. O (Initial Expert Report Of Joyce Baran ¶¶ 90-131)
[33] Casieri Decl. Exh. M (Baran Dep. 263:16-264:3
[34] Casieri Decl. Exh. N (Baran Deposition Exh. 3); Casieri Decl. Exh. M (Baran Dep. at , 247:17-248:9, 133:22-134:4, 38:18-39:18; Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter, pages 7-19, Exhibit 6); Casieri Decl. Exh. O (Initial Expert Report Of Joyce Baran ¶¶ 134-142).

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) *abrogated by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). Rather, the burden is first on a challenger to introduce evidence which raises the issue of invalidity. Further, a challenger must establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity. *See, e.g.*, *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). The presumption of validity creates "'a heavy burden of persuasion,' requiring proof of the defense by clear and convincing evidence . . . . the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011). "Thus, [a challenger's] silence leaves untouched at this stage what the statute presumes, namely, that [the] patent is valid." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) citing *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1270 (Fed. Cir. 1985).

The Federal Circuit further explained, "To create a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed." *Id*. at 1560 "The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, the burden on the moving party may be discharged by . . . pointing out to the district court[ ] that there is an absence of evidence to support the nonmoving party's case." *Id*. at 1560. The patent holder has no obligation to introduce any evidence on validity. *Id*. at 1564.

> 1)   <u>Anticipation and Obviousness of Utility Patents</u>

"A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987). "The obviousness determination turns on underlying factual inquiries involving:  (1) the scope and content of prior

art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) secondary considerations such as commercial success and satisfaction of a long-felt need." *Proctor & Gamble Co. v. Teva Pharms.*, 566 F.3d 989, 994 (Fed. Cir. 2009).

2)   Anticipation and Obviousness of Design Patents

The test for anticipation is the same as that to determine infringement of a design patent, which is whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). The question of substantial similarity is further refined as whether "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008). Determining obviousness for design patents is a two-step process governed by well-settled law. First, there must be "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982)). Only after such a primary reference has been identified can other "secondary references" be used to modify it to create a design that has the same overall appearance as the claimed design and thus render the design at issue obvious. *Id.*

**C.   Plaintiff Cannot Provide Clear and Convincing Evidence of Anticipation or Obviousness of Any of the Patents-in-Suit**

In the present case, Plaintiff has failed to offer any evidence on anticipation and obviousness (collectively referred to herein as "invalidity"), let alone clear and convincing

evidence. Plaintiff identified only two individuals[35] who may possibly provide the basis for its contention that the patents in suit are invalid: Donna Mines and Joyce Baran. Ms. Mines has provided no evidence on the issue of the alleged invalidity of the patents-in-suit. And as detailed in Defendants' Daubert Motion, Ms. Baran used the wrong legal standards for both utility patents and the design patent in forming her invalidity opinions that form the basis of her report. With the opinion of Ms. Baran properly excluded, Plaintiff cannot possibly meet its burden of proof.

Without the opinion of Ms. Baran, Plaintiff has only attorney argument to provide the basis of Plaintiff's contention that the alleged prior art renders the patents-in-suit invalid.

Ms. Mines's declaration contains no opinions concerning the validity of the patents.[36] During her deposition Ms. Mines testified that she had not formed an opinion as to the validity of any claims of the patent, prior to, or subsequent to, the preparation of her declaration.[37] Ms. Mines offered some testimony generally on the functionality of bras but no testimony that could in any way be clear and convincing evidence that the '478 patent is invalid as functional.[38]

In accordance with the local rules, Chico's provided Invalidity Contentions. Those contentions however are not evidence but merely attorney argument, especially in light of Chico's Objections to Defendants' Notice of Deposition. Because Defendants' patents are presumed valid, Defendants are not required to rebut, with evidence, Chico's unsupported contentions of invalidity. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

---

[35] In Answer to Defendants' Interrogatory concerning Chico's intention to call an employee of Chico's or one of its affiliates to provide expert testimony at trial, Chico's responded that it would not make a disclosure under Rule 26 (a)(2)(C) until November 12, 2014. Casieri Decl. Exh. G (Plaintiff's Answers to Defendants' Third Set of Interrogatories (No 12-15), dated July 30, 2015, No. 15. Chico's further responded that they expected to rely upon the testimony of Donna Mines with respect to claim construction and the opinions in her declaration. *Id*.

[36] Casieri Decl. Exh. H (Declaration of Donna Mines Regarding Plaintiff's Motion For Claim Construction, dated July 11, 2014).

[37] Casieri Decl. I (Mines Dep. at 87:3-9)

[38] Casieri Decl. I (Mines Dep. at 62:17-63:12, 79:2-17, 81:11-82:4)

Accordingly, without the opinion of Joyce Baran, Plaintiff cannot meet its burden of establish facts, by clear and convincing evidence, that the patents-in-suit are invalid.

1)   <u>Utility Patents: the '347 patent" and the '310 patent</u>

In her invalidity opinion, Ms. Baran applies a broader claim interpretation for her invalidity opinion and a narrower claim interpretation for her non-infringement opinion. Ms. Baran admits she used this double standard and does not offer an alternate invalidity analysis under the narrower claim interpretation. Accordingly, because Ms. Baran did not utilize a consistent claim construction for any of the independent claims of the patents-in-suit, she cannot offer an opinion on the validity of any of the claims of the patents-in-suit. In short, Plaintiff does not create a genuine issue of fact by merely identifying alleged prior art.

The difficulty of determining what her opinion might be is compounded by the fact that Ms. Baran relies on over 27 alleged pieces of prior art as primary references. Ms. Baran admits that she considered some references to be more relevant and some to be less relevant.  There is, however, no way to know if her opinion would be the same or different if she used what she considered to be the correct claim interpretation. As just one example, with regard to claim 1 and 16 of the '347 patent (the independent claims), Ms. Baran's report indicates:

> Because Wink contends that attaching the material overlay to an elastic band underneath the cups is the same as attaching the material overlay under a bottoms surface of the cups, I used the same interpretation in my Initial Report on invalidity. However, there is a distinction in the two approaches, and that differs between how it is claimed versus how the Chico's bra is constructed.[39]

Ms. Baran confirmed that she did indeed us a different claim interpretation for these claims in her invalidity report.  Ms. Baran testified as follows:

> Q.·  ·All right.·  When we left we were discussing, "The Footnote 5 contained in Exhibit 2 contends that "attaching the material overlay to an elastic band

---

[39] Casieri Decl. Exh. (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter, Footnote 5 and 6 to Exhibits 2 and 3).

15

underneath the cups is the same as attaching the material overlay under a bottoms surface of the cups, I used the same interpretation in my initial report on invalidity.

What I asked you is:· **Did you use a different claim interpretation in your invalidity analysis in your initial report than you are using on your non-infringement analysis in Exhibit 2?**

**A.· ·Yes, I did.**

Baran Dep. at 221:13- 222:2 (emphasis added).

Ms. Baran clearly used a claim interpretation in her invalidity analysis that was contrary to her own opinion of how the claim should be interpreted.[40] Her invalidity interpretation was obviously broader in scope in an effort to include as many pieces of alleged prior art as possible. And this is just one example of this occurrence. Each independent claim is affected by these inconsistencies. As another example, for the term "cover" in claim 15 of the '347 patent and claims 1 and 18 of the '310 patent, Ms. Baran used a broader claim interpretation in her invalidity report than in her non-infringement report.[41] Ms. Baran indicates with regard to the term coverage:

> Q.· ·So if it's readily see-through then the claim term is not met, is that your opinion?
> A.· ·What page were we on before, wetware on 3.
> Q.· ·We were on Claim 15, '347 or '310?· We are in Exhibit 3, Claim 15, '347.
> A.· ·Does not meet the settlement.
> Q.· ·And that's under your claim interpretation?
> A.· ·That was my interpretation.
> Q.· ·Okay.· And in the claim interpretation was it cannot be readily see-through?
> A.· ·Correct.
> Q.· ·Now, did you use that claim interpretation in your invalidity analysis contained in your initial expert report?
> A.· ·No, I did not.· No, I did not. When I made this comment here, I was interpreting that Wink said it couldn't be see-through.
> Q.· ·Okay.
> A.· ·It might have been a misinterpretation.
> Q.· ·What claim interpretation do you use in your invalidity analysis?
> A.· ·Just coverage.
> Q.· ·So it could be see-through?
> A.· ·Correct.

---

[40] Casieri Decl. Exh. M (Baran Dep. at 221: 13 – 222: 25)
[41] Casieri Decl. Exh. M (Baran Dep. at 226: 11 – 230: 25, 231: 21- 234: 7)

Q.· ·When you say Wink's contention, you are really talking about what is indicated in the patent?

A.· ·The way I was looking at the patent when I was looking at this claim.

Q.· ·So you're viewing the words and specification and drawing in the patent as Wink's contention; is that a fair characterization?

A.· ·That's where I just found it over here.

Q.· ·Now, if you were to use interpretation that you used in your invalidity analysis for coverage, would this claim element be met, this claim element of·15?

A.· ·Yes, it would.

Baran Dep. at 229:3-230:25.

Again, with regard to element (d) of claim 1 and 18 of the '310 patent, Ms. Baran uses a different interpretation for her invalidity analysis than her non-infringement analysis. Specifically, Ms. Baran considered the presence of a wing to not meet element (d) of claim 1 in her non-infringement analysis but considered that element disclosed in pieces of prior art with wings (for example the Natori Zen Floral Cami Bra and DeSouza patent have wings).[42]

It is not Defendants' burden to disprove that these alleged prior art references invalidate the asserted claims. Nor is it Defendants' burden to determine what Plaintiff's basis for its invalidity contentions are. Plaintiff cannot possible establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity.

2)   Design Patent: the '478 patent

Ms. Baran's opinion regarding the invalidity of the '478 patent should be excluded for the reasons provided in Defendant's Daubert Motion. However, even if Ms. Baran's opinion is not excluded, Ms. Baran's opinion is so problematic as to foreclose the possibility of Plaintiff producing clear and convincing evidence upon which a reasonable jury could invalidate the patent. Ms. Baran does not understand and does not properly apply the underlying legal principles that are involved in evaluating infringement and validity. Ms. Baran relies on the wrong legal standards to perform her analyses of infringement and validity and to evaluate the

---

[42] Casieri Decl. Exh. M (Baran Dep. at 236: 12-244:5,  38: 3- 39:8, 51:11-52:16

evidence. Ms. Baran also provides inconsistent analyses on the issues of infringement and validity often taking inconsistent positions on the issues in order to support her conclusions.

Chief among Ms. Baran's errors pertaining to her analysis of the '478 patent is her inconsistencies between her invalidity opinion and non-infringement opinion. Specifically, in her non-infringement report, Ms. Baran identifies a number of design features in the accused product that allegedly distinguish it from the claimed design. Yet in Ms. Baran's invalidity report, those same distinguishing features are present in the prior art Ms. Baran relies on for invalidity.

Put simply, Ms. Baran considers the so-called distinguishing features only relevant when they support her non-infringement position but irrelevant when they contradict her invalidity position. Considering the standard for infringement and anticipation are the same, Ms. Baran fails to explain how the same designs feature could be substantially the same to the claimed design in the prior art but a distinguishing feature in the accused product.

For one example, Ms. Baran identifies the so-called "wing" in the accused product as a distinguishing feature.[43] [44] Yet in her invalidity report, Ms. Baran purposefully does not consider the wings in the alleged anticipatory design of Natori Zen Floral Cami Bra.[45] Note Ms. Baran was asked to draw dotted lines on the portions not considered in her invalidity analysis.[46]

For another example, Ms. Baran relies on the so-called two underwire construction as a distinguishing feature.[47]

---

[43] Casieri Decl. Ms. Baran's testified that the "wing and bone" identified as features that are different from the claimed design. Casieri Decl. Exh. M (Baran Dep. at 133:22-134:4). She later testified that she excluded the wing and bone from here analysis of the rear view but used them as a reference point for the front view. Casieri Decl. Exh. M (Baran Dep. at 135:4-138:3).

[44] Casieri Decl. Exh. N (Page 9 of Exhibit 3 to deposition of Joyce Baran taken on February 13, 2015).

[45] Casieri Decl. Exh. Q (Exhibit 1 to deposition of Joyce Baran taken on February 13, 2015, at ¶¶ 134 -138).

[46] Casieri Decl. Exh. M (Baran Dep. at 38:18-39:18).

[47] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter, pages 12 and 13).



Yet, Baran relies on an alleged piece of prior art with the same feature both in an anticipatory and obviousness analysis.[48] The picture below is just one example taken directly from Ms. Baran's expert report.



---

[48] Casieri Decl. Exh. O (Initial Expert Report Of Joyce Baran,¶¶ 134, 137-139, 142)

19

There are a number of other examples but one glaring inconsistency is Ms. Baran's consideration of a lace overlay in her analysis. Ms. Baran agreed with Plaintiff's contention that a lace pattern overlay gives striking different appearance from the smooth material overlay.[49]

Accordingly, Ms. Baran clearly considers the presence of a lace overlay as creating a striking difference in appearance over a smooth overlay. Yet, Ms. Baran relies on lace front garments as invalidating prior art but fails to explain how something (*i.e.* lace) with a striking difference in appearance can also be substantially the same when it pertains to invalidity[50] and closest prior art in three way infringement comparison.[51] One example is provided below.[52]



Ms. Baran's invalidity analysis is so contradictory with her non-infringement analysis, it is clear that Plaintiff cannot prove that any of the identified prior art anticipates or renders obvious the claimed design by clear and convincing evidence.

---

[49] Casieri Decl. Exh. M (Baran Dep. at 247:17-248:9).
[50] Casieri Decl. Exh. O (Initial Expert Report Of Joyce Baran,¶¶ 134 and 138 )
[51] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter, Exhibit 6).
[52]) *Id.*

## V.    The Accused Products Infringe the "310 Patent and/or the '347 Patent

### A.    Statement of Facts

1.      Defendants contend that the '347 and '310 patents are infringed by Chico's Oh My Gorgeous smooth and lace cami bras, and Chico's Bridget style bras identified by Chico's with the following Style Names: Bridget, both Bridget Cami Bras (which appear to be the Oh My Gorgeous lace Cami Bra), Bridget Luxe, Bridget Dazzle, Bridget Lurex, Bridget Smooth, and Sequins Cascade (collectively the "accused products").[53]

2.      Defendants explained the basis as to how the accused products literally contain each and  every limitation of claims 1-6, 8-12 and 15-16 of the '347 patent, and claims 1-6, 8-9 12-16 and 18-20 of the '310 Patent.[54]

3.      Plaintiff offered a rebuttal to the Expert Report of Karin Yngvesdotter

4.      Ms. Baran admits to using a narrower claim interpretation in her expert report than she used in her invalidity analysis.  Ms. Baran did this with multiple claim elements involving each independent claim involved in the case.[55]

5.      With regard to claims 1-12 and 16 of the '347 patent, Plaintiff, through Ms. Baran's rebuttal to the Expert Report of Karin Yngvesdotter, identified only a single element allegedly not present in the asserted claims.[56]  Specifically, Ms. Baran identified element "(f) wherein the material overlay is attached to an outside surface of each foam cup and attached under a bottom surface of the foam cups" of claim 1 as not present.[57]

---

[53] Casieri Decl. Exh. P (Expert Report Of Professor Karin Yngvesdotter Section IV).

[54] Casieri Decl. Exh. P (Expert Report Of Professor Karin Yngvesdotter Section IV and Exhibits B-H).

[55] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter Exhibits 2-5 at footnotes 5-6);    Casieri Decl. Exh. M ( Baran Dep. 220:10- 223: 21;  226:11- 230:25; 231:21-234:7;  236:12-244:5; 38:3- 39:8; and 51:11-52:16.

[56] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter Exhibits 2-3) ; Casieri Decl. Exh. M ( Baran Dep. 196:12- 200: 8;  218:19- 220:9).

[57] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter Exhibits 2-3).

6.      For claim 16 of the '347 patent, Ms. Baran identified the element "a material overlay attached to the outside of the foam cup, underwire bra, wherein the material overlay is attached from below the underwires or foam cups" as allegedly not present.[58]

7.      As to the allegedly missing element for both claims 1 and 16 of the '347 patent, Ms. Baran explained "[t]he material panel on the Oh My Gorgeous Smooth Cami Bra is not attached under a bottom surface of the foam cups, it is attached to an elastic band that is underneath the cups[5]. Therefore, this element is not met."[59]

8.      Ms. Baran's opinion is based on a different claim construction for this element than she used in her invalidity analysis contained in her initial expert report.[60]

9.      Ms. Baran admits that the allegedly missing element in the accused product would be present if she used the claim interpretation she used in her invalidity analysis.[61]

**B**.      **Legal Standard**

Summary judgment on the issue of infringement or noninfringement is available in patent litigation. *See, e.g., Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351 (Fed. Cir. 2006). A claim for patent infringement must be proven by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). Patent infringement is a two-step inquiry. First, the court must construe the asserted patent claim(s) as a matter of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). Second, the fact finder must determine whether the accused product, composition, system, or process contains each limitation of the properly construed claims, either literally or under the

---

[58] *Id.*

[59] *Id.*

[60] Casieri Decl. Exh. L (Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter footnotes 5 and 6 to Exhibits 2-3);   Casieri Decl. Exh. M ( Baran Dep. at 220:10-224:22).

[61] Casieri Decl. Exh. M ( Baran Dep. at 223:3-224:12).

doctrine of equivalents. The first step is a question of law; the second step is a question of fact. *Ferguson Beauregard v. Mega Sys., Inc.*, 350 F.3d 1327, 1338 (Fed. Cir. 2003).

Summary judgment is particularly appropriate in patent cases where the only real dispute between the parties concerns the proper meaning of the patent claims. *See Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 612 (Fed. Cir. 1999). Because claim construction is a question of law for the court to decide, disputes over the proper meaning of claim terms do not alone raise genuine issues of material fact sufficient to preclude the grant of summary judgment. *See Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1461 (Fed. Cir. 1998).

The basic principles of claim construction are well-known to this Court. Courts must construe the claims according to the understanding of a person of skill in the relevant art at the time of the invention. *See generally Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Claim interpretation begins with the "words of the claims themselves," which are given their ordinary and customary meaning, *unless* a contrary definition is stated in the patent specification or prosecution file history. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

## C.   Chico's infringe claims 1-6, 8-12 and 15-16 of the '347 patent, and claims 1-6, 8-9 12-16 and 18-20 of the '310 Patent.

Plaintiff literally infringes the asserted claims of both of the utility patents-in-suit. Defendants proved patent infringement by a preponderance of the evidence through the Initial Expert Report of Karen Yngvesdotter. Defendants' expert testified, and the claim charts in her expert opinion show, that Plaintiff's accused products literally contain every limitation of the asserted claims. Plaintiff's own expert admits that Plaintiff's accused products contain every limitation of many of the asserted claims when applying the claim construction from her invalidity opinion.

Plaintiff's expert, Joyce Baran, provided a rebuttal report that alleged non-infringement of the '347 patent and '310 patent. As detailed above, Ms. Baran admits that she used a narrower claim interpretation to support her non-infringement opinion than the broader claim interpretation she used for her invalidity report. To the extent Ms. Baran's testimony is not struck and given any weight, her opinion still does not rebut infringement. The claim construction she adopts for her invalidity opinion is contrary to the plain and ordinary meaning of the terms of the claims.

This discrepancy of Ms. Baran's claim interpretation affects each asserted claim in both utility patents-in-suit. For this reason and others detailed in Defendants' Daubert motion, Joyce Baran's Rebuttal To Expert Report Of Professor Karin Yngvesdotter should be struck. Without her rebuttal, there are no uncontested facts as to whether the accused products infringe claims 1-6, 8-12 and 15-16 of the '347 patent, and claims 1-6, 8-9 12-16 and 18-20 of the '310 patent. Defendants therefore have met their burden of proof of infringement.

In the alternative, should the testimony of Ms. Baran not be struck, Defendants seek Summary Judgment of Infringement of claims 1-12 and 16 of the '347 patent. Of these claims, claim 1 and 16 are independent claims. For both of these claims, Plaintiff identifies a single claim element it contends is not present in the accused products. In particular, Ms. Baran claims that the element "(f) wherein the material overlay is attached to an outside surface of each foam cup and attached under a bottom surface of the foam cups" of claim 1 is not present in the accused products. Similarly, for claim 16 Ms. Baran identifies the element "a material overlay attached to the outside of the foam cup, underwire bra, wherein the material overlay is attached from below the underwires or foam cups" as allegedly not present in the accused product.

The basis for Ms. Baran conclusion is that "the material panel on the Oh My Gorgeous Smooth Cami Bra is not attached under a bottom surface of the foam cups, it is attached to an

elastic band that is underneath the cups." Ms. Baran's report does not contain a claim construction for this element but she explained during her deposition that the overlay needed to be attached directly to a bottom surface of the foam cup.[62]

Based on this testimony, Ms. Baran is clearing reading out the "under" from the claim, or alternatively is reading the term "directly" into the claim.  Moreover, under the construction Ms. Baran used in her invalidity report, Ms. Baran admits that accused products contain this element.[63]

Putting aside the inappropriateness of using different claim interpretations for infringement and for validity, Ms. Baran agrees that the one element that is allegedly missing from the accused products is present in the interpretation she used for her invalidity analysis. That is, if Ms. Baran applies a claim interpretation that does not read out the word "under" from the claims (or add the word "directly"), Ms. Baran agrees the claim limitation is met. It is an undisputed fact that the accused products literally infringe claims 1-12 and 16 of the '347 patent.

## V.    Conclusion.

For the reasons stated herein, this Court should hold as follows:

1) The patents-in-suit are not unenforceable due to inequitable conduct;

2) The patents-in-suit are not invalid over the alleged prior art; and,

3) Chico's accused products literally infringe U.S. Patent Nos. 8,506,347 and 8,182,310.

---

[62] Casieri Decl. Exh. M ( Baran Dep. at 204:16-206:8).
[63] Casieri Decl. Exh. M ( Baran Dep. at 224:20 – 225:5).

Respectfully submitted,

/s/Christopher Casieri/
CHRISTOPHER S. CASIERI (*pro hac vice*)
MCNEELY, HARE & WAR, LLP
12 Roszel Road, Suite C104
Princeton, New Jersey 08540
Telephone: (609) 731-3668
Facsimile: (202) 478-1813
chris@miplaw.com

AND

STEVEN WAR (*pro hac vice*)
KEVIN MCNEELY (*pro hac vice*)
MCNEELY, HARE & WAR LLP
5335 Wisconsin Ave, NW Suite 440
Washington, D.C. 20015
Telephone: (202) 274-0214
Facsimile: (202) 478-1813
steve@miplaw.com
kevin@miplaw.com

AND

/s/Shyamie Dixit
Shyamie Dixit, Esq. (sdixit@dixitlaw.com)
Florida Bar No.: 719684
Robert L. Vessel, Esq. (rvessel@dixitlaw.com)
3030 N. Rocky Point Drive West, Suite 260
Tampa, FL 33607
Telephone: (813) 252-3999
Facsimile: (813) 252-3997
Attorneys for Defendants

*Attorneys for Defendants* 1654754 ONTARIO,
INC. d/b/a WINK INTIMATES, ANDREA CLAIR
AND ANASTASIOS KOSKINAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of March 2015, I filed the foregoing with the Clerk of Court by utilizing the Court's CM/ECF system, which will send a Notice of Electronic Filing to the following:

Ava K. Doppelt, Esq. (adoppelt@addmg.com)
Florida Bar No.:  393738
Ryan T. Santurri, Esq. (rsanturri@addmg.com)
Florida Bar No.:  015698
ALLEN, DYER, DOPPELT, MILBRATH & GILCHRIST, PA
255 South Orange Avenue, #1401
Orlando, FL 32801
Tel: 407-841-2330
Fax: 407-841-2343

*s/ Shyamie Dixit*
Shyamie Dixit, Esq. (sdixit@dixitlaw.com)
Florida Bar No.: 719684
