UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHICO'S FAS, INC., a Florida corporation

       Plaintiff,

v.

Case No: 2:13-cv-792-FtM-38DNF

ANDREA CLAIR, ANASTASIOS KOSKINAS and 1654754 ONTARIO, INC.,

       Defendants.
_____/

# ORDER[1]

This matter comes before the Court on Plaintiff's Motion to Exclude the Testimony of Defendants' Expert Karin Yngvesdotter (Doc. #70) filed on March 6, 2015. Defendants filed a response in opposition on March 23, 2015. (Doc. #87). This matter is ripe for review.

## Background

This is a patent infringement lawsuit. Plaintiff Chico's Fas, Inc. ("Chico's") sues Defendants Andrea Clair, Anastasios Koskinas, and 1654754 Ontario, Inc. ("Wink") for declaratory judgment. (Doc. #61). The three counts are specifically declaratory judgment of non-infringement of the patents-in-suit (Count I); declaratory judgment of invalidity of

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

the patents-in-suit (Count II); and declaratory judgment of unenforceability of the patents-in-suit (Count III). (Doc. #61).

Chico's and Wink sell camisole bras,[2] garments that combine traditional bras with a swatch of fabric that covers cleavage. Wink owns camisole bra patents. At issue in this litigation is Wink's design patent, United States Patent No. D622,478 ("D'478 Patent"), and two utility patents, United States Patent Nos. 8,506,347 ("'347" Patent") and 8,182,310 ("'310 Patent"). It is Wink's position that Chico's lace and smooth Oh My Gorgeous Cami Bra ("OMGCB") infringes its patents.

To support its position in this litigation, Wink retained Karin Yngvesdotter as an expert. She holds a degree in Applied Science from the Fashion Institute of Technology and has over 20 years of experience in technology. (Doc. #70-1, at 3). She is a professor at the Pratt Institute in Brooklyn, New York, where she has taught on the subject of bra, lingerie, swimwear construction, design, patternmaking, and fit. (Doc. #70-1, at 3).

Yngvesdotter provided two expert reports, an initial and a rebuttal report. (See Doc. #70-1; Doc. #70-2). She is expected to testify that Chico's product design is substantially similar to Wink's design patent, D'478 Patent. (Doc. #70-1, at 4). She is also expected to testify that Chico's smooth and lace OMGCB products contain elements in Wink's patented products, '347 Patent and '310 Patent. (Doc. #70-1, at 4). Chico's seeks to exclude Yngvesdotter's expert opinion.

## Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides, in relevant part:

If scientific, technical, or other specialized knowledge will assist the trier of

---

[2] Sometimes throughout this order "camisole" bras are referred to as "cami" bras.

2

> fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; see also United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (stating that expert testimony assists the trier of fact "if it concerns matters that are beyond the understanding of the average lay person" but "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citation omitted).

In Daubert v. Merrell Dow Pharm., Inc., the Supreme Court noted Rule 702 requires trial courts to serve as "gatekeepers" to guarantee speculative and unreliable opinions do not reach the jury. 509 U.S. 579, 589 n. 7 (1993). The objective of this gatekeeping function is to ensure expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). A court's gatekeeping role is significant given "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." Frazier, 387 F.3d at 1260.

To fulfill this role, the Eleventh Circuit instructs district courts to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citation omitted). In evaluating the admissibility of expert testimony, district courts "have substantial discretion in deciding how to test an expert's

reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir.1999) (citation omitted). Nonetheless, it is not the function of the court to determine the ultimate persuasiveness of the testimony. See Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted).

Discussion

Chico's argues the expert opinion should be excluded because (1) the initial report improperly compares "major design elements;" (2) the initial report does not take into accord all relevant prior art; (3) the initial report uses a test not recognized by law; (4) Yngvesdotter's opinions are not the product of reliable methods; and (5) the rebuttal report should not be considered to "save" Yngvesdotter's opinions. In addition, Chico's argues Yngvesdotter improperly uses misleading photographs and Wink products. Lastly, Chico's argues Yngvesdotter's rebuttal report improperly opines on legal issues. The Court will address each argument, along with the responses, below:

*A. Whether the initial report improperly compares major design elements?*

Chico's argues Yngvesdotter did not perform a three way comparison among the D'478 Patent drawings, Chico's products, and universe of prior art identified by Chico's. In addition, Chico's argues since Yngvesdotter stated "all of the major design elements from the patented D'478 design are also found in Chico's product," and there is no test in which an individual selects major design elements, her initial report is improper. (See Doc. #70-1, at 22). Chico's avers Yngvesdotter used a test more closely aligned with a utility patent analysis rather than an ordinary observer test. Chico's asserts Yngvesdotter's analysis is irrelevant and misleading.

Upon consideration, Chico's argument as it relates to the three way comparison is unpersuasive. Yngvesdotter clearly conveys in her initial report that she "conducted a 'three way' analysis of the Chico's product, the D'478 Patent and the prior art." (Doc. #70-1, at 23). As a result, the Court will not assume otherwise. Moreover, although there is no "major design elements" test with regard to a designed patent analysis, the Court will not take this language out of context. Upon review of Yngvesdotter's initial report, the Court finds Yngvesdotter used such language "in the eye of an ordinary observer." Gorham Co. v. White, 81 U.S. 511, 528 (1871). The Court cannot soundly find Yngvesdotter's analysis is irrelevant or misleading based on Chico's arguments. The motion is denied.

B. *Whether the initial report does not take into accord all relevant prior art?*

Chico's again argues Yngvesdotter did not conduct a three way analysis because she only considered two pieces of prior art, the Jodie mastectomy bra and the Costanza patent. (See Doc. #70-3, at 18-19). Chico's argues Yngvesdotter ignored, without explanation, dozens of other prior art references to arrive at her conclusion. (See Doc. #70-4, at 7). Chico's contends Yngvesdotter's analysis is irrelevant and misleading.

Upon review of Yngvesdotter's deposition testimony and reports, the Court is not convinced by Chico's arguments. Yngvesdotter clearly states she conducted a three way analysis between the Chico's bra, the D'478 patent, and the Jodie bra. (Doc. #70-3, at 18-19; Doc. #70-1, at 23; Doc. #70-3, at 18-19). The Court is also not convinced by Chico's prior relevant art argument as it relates to the design patent-in-suit. In her initial report, Yngvesdotter indicates she reviewed the file history of the D'478 Patent, the D'478

prior art, the prior art cited by Chico's attorneys, among other things. (Doc. #70-1, at 21-22). Thus, the Court cannot soundly assume otherwise.

In addition, the prior art Chico's cites to are with regard to other utility patents. (See Doc. #70-4, at 7 (relevant prior art cited by Chico's under utility patents heading)). Even though utility patents can constitute relevant prior art when considering design patents, the Court is not convinced by Chico's argument here. See Reddy v. Lowe's Cos., Inc., --- F. Supp. 3d. ----, Civil Action No. 13-13016-JLT, 2014 WL 6483289, at *8 (D. Mass. Nov. 18, 2014) ("To be sure, utility patents can constitute relevant prior art when considering design patents."). Chico's has not identified a specific design patent that has been omitted by Yngvesdotter's prior art analysis, and thus the Court is not convinced her analysis is improper, irrelevant, or misleading. Id. ("In this case, however, the Defendants' complete omission of any design patents (especially when design patents constitute the bulk of the references cited by the examiner), suggests that the prior art analysis is not yet fully briefed, and that any ruling on such a basis is premature."). Moreover, Chico's has not explained why additional prior art references are more pertinent than the prior art considered by Yngvesdotter, with regard to the design or utility patents-in-suit. Thus, the motion is denied.

C. *Whether the initial report uses a test not recognized by law?*

Next, Chico's argues Yngvesdotter offers no detail or analysis for her conclusion that "both the D'478 Patent and the Chico's Product have the same key features which depart from the prior art." (Doc. #70-1, at 24). Again, the Court finds Chico's argument is unpersuasive. Yngvesdotter explains the test, such as the three way analysis, she used to reach her conclusions in her reports and deposition testimony. (See, e.g., Doc. #70-3,

6

at 18-19). "Any weakness in the underpinnings of the expert's opinion go to its weight rather than its admissibility." Se. Metals Mfg. Co., Inc. v. Fla. Metal Prods., Inc., 778 F. Supp. 2d 1341, 1344 (M.D. Fla. 2011) (citing Jones v. Otis Elevator Co., 861 F.2d 655, 663-64 (11th Cir. 1988)). The motion is denied.

    D. *Whether the expert's opinions are products of reliable methods?*

Chico's again argues Yngvesdotter's conclusions are not supported by analysis. Once more, the Court finds this argument is unpersuasive. The motion is denied. See supra.

    E. *Whether the rebuttal report should be considered to "save" the expert's opinions?*

Chico's argues Yngvesdotter's initial report did not contain the totality of her opinions and rebuttal report contains new theories, that her rebuttal report must be excluded. Upon review, the Court finds Chico's fails to sincerely point to any new theories or "separate and distinct analysis" Yngvesdotter allegedly incorporated in her rebuttal report. See generally Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc., No. 603CV1860ORL19KRS, 2005 WL 2465020, at *4-5 (M.D. Fla. Oct. 6, 2005) (expert's rebuttal report offered separate and distinct analysis). Instead, Chico's points to sections of Yngvesdotter's expert report where she clearly provided rebuttal analysis to Chico's expert's initial report. (See Doc. #70-2; cf. Doc. #72-3). Upon review of the rebuttal report, the Court finds Yngvesdotter responds to Chico's expert report and nothing more. As such, the motion is denied.

    F. *Whether the expert used altered garments and misleading positioning, and if so, whether such use was improper?*

Chico's argues in review of the cami bras, Yngvesdotter cut and folded portions of Chico's bra and thus obstructed its view in photographs. Upon review of the photographs,

and even assuming Yngvesdotter used altered garments and misleading positioning, the Court does not find Yngvesdotter's testimony is due to be excluded on this ground. Such argument truly goes to the weight and creditability of Yngvesdotter's testimony, rather than its worthiness of being introduced at trial. Chico's is entitled to vigorous cross examination, as it sees fit. Citizens Prop. Ins. Corp. v. Simkar LLC, 813 F. Supp. 2d 1356, 1361 (M.D. Fla. 2011) ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (citing Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003)). The motion is denied.

*G. Whether the comparison of Chico's products to Wink's products is improper?*

Chico's argues there are distinctions in design between the Wink commercial product and the D'478 Patent. Chico's argues Yngvesdotter never offers the opinion that the Wink 9to5 Bra falls within the claim of the D'478 Patent. In light of this, Chico's asserts without such a conclusion there is no legal basis to compare the accused product to the Wink 9to5 Bra. Further, Chico's argues the actual Wink product differs from the D'478 Patent in several ways, such as the Wink product does not sharply turn up at the straps and the material on the front of the bra is contoured rather than flat. Chico's also complains about the pictures of the different bras, again. Upon review, the motion is denied. Such arguments go to the creditability of the expert's findings.

*H. Whether the expert's report improperly opines on legal issues?*

Chico's argues Yngvesdotter engages in improper legal interpretation by explaining her view of the applicable law, citing cases and her interpretation of those

cases. Chico's specifically cites to pages 4-6, 8-11, and 13 of her report as to where Yngvesdotter went rogue, so to speak, in her expert opinion.

The Court has specifically reviewed the sections of Yngvesdotter's report Chico's cites, along with the reports in the entirety. Upon a copious review, the Court is unpersuaded by Chico's arguments. Yngvesdotter clearly indicates she is "not an attorney and [has] no legal training." (Doc. #70-1, at 5). She merely states a review of the law as explained by the Wink attorneys. (Doc. #70-1, at 5-7; Doc. #70-2, at 8). Such review is common and does not warrant striking of such testimony. The motion is denied. Nonetheless, to be clear, only the Court will provide the source of law at trial. Brevard Emergency Servs., P.A. v. EmCare, Inc., No. 6:04-cv-1892-Orl-28JGG, 2006 WL 2425423, at *6 (M.D. Fla. Aug. 21, 2006) ("In the Eleventh Circuit, however, the judge is the only source of law.") (citing Konikov v. Orange County, Fla., 290 F. Supp. 2d 1315, 1318 (M.D. Fla. 2003)).

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion to Exclude the Testimony of Defendants' Expert Karin Yngvesdotter (Doc. #70) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 30th day of April, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record