UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHICO'S FAS, INC., a Florida
corporation

        Plaintiff,

v.                                                                          Case No:   2:13-cv-792-FtM-38DNF

ANDREA CLAIR, ANASTASIOS
KOSKINAS and 1654754 ONTARIO,
INC.,

        Defendants.
_____/

## ORDER[1]

This matter comes before the Court on Defendants' Daubert Motion to Exclude or Limit the Expert Testimony of Joyce Baran and Limit the Expert Testimony of Justin Lewis (Doc. #72) filed on March 7, 2015. Plaintiff filed a response in opposition on March 23, 2015. (Doc. #84). This matter is ripe for review.

### Background

This is a patent infringement lawsuit. Plaintiff Chico's Fas, Inc. ("Chico's") sues Defendants Andrea Clair, Anastasios Koskinas, and 1654754 Ontario, Inc. ("Wink") for declaratory judgment. (Doc. #61). The three counts are specifically declaratory judgment of non-infringement of the patents-in-suit (Count I); declaratory judgment of invalidity of the patents-in-suit (Count II); and declaratory judgment of unenforceability of the patents-

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

in-suit (Count III). (Doc. #61). Wink countersues Chico's. (Doc. #63). The three counterclaims are specifically Infringement of U.S. Patent No. 8,506,347 (Counterclaim I); Infringement of U.S. Patent No. 8,182,310 (Counterclaim II); and Infringement of U.S. Patent No. D622,478 (Counterclaim III). (Doc. #63).

Chico's and Wink sell camisole bras,[2] garments that combine traditional bras with a swatch of fabric that covers cleavage. Wink owns camisole bra patents. At issue in this litigation is Wink's design patent, United States Patent No. D622,478 ("D'478 Patent"), and two utility patents, United States Patent Nos. 8,506,347 ("'347" Patent") and 8,182,310 ("'310 Patent"). It is Chico's position that Chico's lace and smooth Oh My Gorgeous Cami Bra ("OMGCB") does not infringe Wink's patents and that Wink's patents are invalid. To support its position, Chico's retained Joyce Baran and Justin Lewis as experts. Wink now seeks to exclude both experts.

## Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides, in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; see also United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (stating that expert testimony assists the trier of fact "if it concerns matters that are beyond the understanding of the average lay person" but "generally will not help the trier of fact

---

[2] Sometimes throughout this order "camisole" bras are referred to as "cami" bras.

when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citation omitted).

In Daubert v. Merrell Dow Pharm., Inc., the Supreme Court noted Rule 702 requires trial courts to serve as "gatekeepers" to guarantee speculative and unreliable opinions do not reach the jury. 509 U.S. 579, 589 n. 7 (1993). The objective of this gatekeeping function is to ensure expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). A court's gatekeeping role is significant given "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." Frazier, 387 F.3d at 1260.

To fulfill this role, the Eleventh Circuit instructs district courts to determine whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citation omitted). In evaluating the admissibility of expert testimony, district courts "have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir.1999) (citation omitted). Nonetheless, it is not the function of the court to determine the ultimate persuasiveness of the testimony. See Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted).

Discussion

A. JOYCE BARAN

Wink seeks to exclude Joyce Baran as an expert. Baran provided an initial report and rebuttal report related to the infringement issues. (See generally Doc. #85). Wink does not contest her qualifications. The Court will address Wink's arguments below:

> *a. Whether Baran's testimony on anticipation of the D'478 Patent should be excluded because she does not apply the correct legal test?*

Wink argues Baran does not understand the concept of an ordinary observer in the context of design patents because she asked Wink's counsel for clarification during her deposition. (Doc. #72-2, at 10, 13). Wink argues Baran understands the meaning of an "ordinary observer" to be an observer skilled in the art, for purposes of this case someone who understands bras, rather than an ordinary person walking down the street. (Doc. #72-2, at 13). Wink argues sometimes Baran substitutes her analysis from the perspective of an expert as a bra designer for the perspective of an ordinary observer, and this inconsistency is improper. (Doc. #72-2, at 10). Wink argues Baran's lack of understanding of what an ordinary observer is in the context of design patents makes her anticipation of the D'478 Patent testimony incorrect, inconsistent, and unreliable.

The Court is unpersuaded by Wink's anticipation argument. Although Baran requested clarification about the ordinary observer during her deposition, her question was poised in a way that indicates she is aware of the standard but wanted to ensure she answered the deposition questions in accordance with Wink's understanding of an ordinary observer also. The Court will not interpret Baran's deposition testimony out of context. The motion is denied.

> b. *Whether Baran's testimony on anticipation of the D'478 Patent should be excluded because of inconsistent and unreliable testimony?*

Wink argues Baran's testimony should be excluded because she changed her conclusion as to whether the Natori Zen Floral Cami Bra 143020 is substantially similar, the same, or maybe the same as Wink's D'478 Patent. (See Doc. #72-3, at ¶134; Doc. #72-2, at 5-6). A basic reading of the deposition testimony reveals the contrary. That is, Baran testified that the front or outside view of the bras are very similar but the back or inside view of the bras are substantially the same. (Doc. #72-2, at 5-6). Wink's mischaracterization of Baran's testimony does not make Baran's testimony inconsistent or unreliable. The motion is denied.

> c. *Whether Baran's testimony on anticipation should be excluded because she does not understand how to properly assess a design patent?*

Wink argues Baran based her anticipation opinion on a single view of the potential prior art and the D'478 Patent rather than comparing the overall appearance of the two products. The Court rejects this argument because it is not properly supported by evidence.[3] The motion is denied.

> d. *Whether Baran's testimony on obviousness should be excluded because she does not apply the correct legal test?*

Wink argues Baran did not apply the correct legal test for obviousness because she does not identify any art as "basically the same" or a "primary reference." Wink also argues Baran does not understand the true meaning of a "primary reference" for design patent purposes. (See Doc. #72-2, at 31-32). Wink argues Baran used an improper

---

[3] Wink supports this argument with a citation to Baran's deposition testimony. (See Doc. #72, at 9, n.11 (citing Doc. #72-2, at 5-6)). A review of the deposition testimony portion cited, however, does not reveal Baran asked any question as asserted by Wink.

functional analysis. (See Doc. #72-2, at 31-32). Wink asserts Baran ignored basic design features, such as lace appearance, to achieve a particular result.

Upon review, nothing viably supports Wink's obviousness argument. For example, a plain review of the deposition testimony does not reveal Baran does not understand the meaning of a "primary reference." Rather, Baran merely agreed with Wink's explanation of a "primary reference" in her deposition. (See Doc. #72-2, at 31-32). The Court will not interpret Baran's deposition testimony out of context. The motion is denied.

> e. *Whether Baran's testimony on functionality should be excluded because she does not apply the correct legal test?*

Wink argues Baran misunderstands the functionality doctrine as it applies to design patents and therefore her testimony should be excluded. Wink argues Baran considered the bra products on an element-by-element basis rather than considering whether the overall design is dictated by function.

A review of Baran's expert report, however, reveals otherwise. That is, Baran asserts she reviewed Wink's D'478 Patent as a whole and believes as a whole Wink's D'478 Patent is primarily functional. (See Doc. #85-2, at 54 ¶145). Baran's opinion in the expert report is supplemented by her deposition testimony. (See, e.g., Doc. #85-1, at 15, 30, 31). Baran's theory is consistent with the law. See Power Controls Corp. v. Hybrinetics, Inc., 806 F.2d 234, 238 (Fed. Cir. 1986) ("If the patented design is primarily functional rather than ornamental, the patent is invalid."). The motion is denied.

> f. *Whether Baran's opinion on non-infringement of the D'478 Patent should be excluded because it is based on defective functionality, anticipation, and obviousness opinions?*

Wink reiterates its arguments again to assert Baran's testimony should be excluded because she did not use the correct functionality, anticipation, or obviousness

6

test. Wink asserts Baran's testimony goes against its transitive property theory. (See Doc. #72, at 14). Wink also takes issue with Wink's understanding of surface shading or hatched lines. Lastly, Wink takes issue with the side-by-side comparison of the different bra products because at least one bra product was altered.

The Court rejects Wink's repetitive arguments as they relate to functionality, anticipation, and obviousness. Further, the Court finds Wink's transitive property, surface shading or hatched lines, and side-by-side arguments more so go to the weight and creditability of the testimony rather than admissibility. The motion is denied.

> g. *Whether Baran's claim construction for the utility patents are inconsistent and unreliable and should be excluded?*

Wink argues Baran improperly used different claim construction standards for her invalidity and non-infringement analysis of the utility patents. (See Doc. #72-2, 15-18, 23-26). Wink argues a patent claim construction cannot be used selectively to take one position for infringement purposes and another position for validity purposes. In response, Chico's argues Baran offered alternative opinions based on two potential claim interpretations: a construction Baran believes is correct and a construction Yngvesdotter, Wink's expert, believes is correct.

The Court finds Baran is permitted to provide analysis related to her theory and provide analysis with regard to another expert's different theory. Based on Wink's arguments, the Court does not find Baran's testimony is unreliable or worthy of exclusion. The motion is denied.

B. JUSTIN LEWIS

Wink seeks to exclude Justin Lewis as an expert in this case. Lewis provided an expert report that was filed under seal and is related to the potential damages in this case.

(Doc. #S83-B). Wink does not contest Lewis's qualifications. As to the calculation of damages, Wink asserts the parties agree to the following: (1) the "total sales" from the accused product; (2) Soma's "total sales cost" for the accused product; and (3) the gross margin on the accused products for 2012-2014. Wink asserts, however, the parties disagree on what additional costs should be deducted from the gross margin. There are a few costs Wink avers should not be deducted from the gross margin. The Court will address Wink's arguments below:

> *a. Whether Lewis's costs analysis is based on sufficient facts or data*

In essence, Wink argues Lewis did not confirm the veracity of the evidence received from Chico's and thus relied on for his damages analysis. Wink also takes issue with Lewis's clarification through deposition testimony that some of the numbers listed in his charts represent thousands even though the charts labels does not indicate such meaning. In addition, Wink takes issue with how Lewis did not review the Chico's costs associated with its 2014 year.

The Court finds these arguments are unconvincing. Lewis is permitted to rely on the testimony of Chico's 30(b)(6) representatives, financial production, and his experience and understanding of Chico's business to determine the appropriate expenses to deduct. For example, Lewis reviewed Form 10-K documents and spoke to Chico's employees to ensure he understood the financial information related to the accused bra products. Thus, Lewis's testimony is based on sufficient evidence. In addition, Lewis's clarification during his deposition testimony regarding the numbers in a chart does not make his testimony unreliable. Also, the 2014 Chico's costs were not available for Lewis's review at the time

his report was made. The Court will not fault Lewis for not reviewing materials that were clearly unavailable to him at the time. The motion is denied.

### b. Whether Lewis's failed to show certain costs are related to the accused product

Wink argues Lewis fails to show each of the costs deducted from the total profits are associated with the single product accused of infringing the D'478 Patent. Instead, Wink asserts Lewis applies an across the board deduction based on the percentage of revenue from sales of the OMGCB revenue as compared to the total revenue for Soma Intimates for the year. (See Doc. #S83-B, at 27, Table 9). Wink argues this approach was rejected in a similar case. See Burger King Corp. v. Pilgrim's Pride Corp., 934 F. Supp. 425 (S.D. Fla. Aug. 15, 1996).

In opposition, Chico's argues Wink's reliance on a trademark chicken finger case is misguided. See generally id. Chico's argues Wink's push for a bright line rule is unsupported by law and improper in design patent cases because "[n]either case law nor logic provides a clear rule for the proper treatment of fixed expenses in computing an award of profits." Schnadig Corp. v. Gaines Mfg. Co., Inc., 620 F.2d 1166, 1172 (6th Cir. 1980). Chico's argues Lewis provided a case specific analysis as it relates to costs.

Upon review, the costs Chico's seeks to deduct are related to marketing the OMGCB specifically. (See Doc. #S82, at 27, Exh. 2.4-2.5). As such, this case is distinguishable from Burger King. 934 F. Supp. 425. In Burger King, the court did not allow the deduction of costs because the defendant failed to show the advertising costs were specifically related to the sale of chicken tenders rather than other prepared foods. Id. at 426. Whereas, here there is no persuasive evidence, such as deposition testimony, that Chico's advertising costs, as listed in Lewis's report, are not limited to the sales of

9

the accused bra products. In fact, the Court's review of Lewis's report reveals otherwise. (See, e.g., Doc. #S83-B, at 28; Exh. 2.4-2.5). The Court cannot soundly assume the contrary. Based on the argument and evidence before the Court, the motion is denied.

### c. Whether Chico's failed to show taxes are deductible

Wink argues Lewis contends a portion of Chico's taxes should be deducted from the gross margin. (See Doc. #S83-B, at 31-33). Wink disagrees with Lewis's contention because this would prevent it from receiving Chico's total profits and thus frustrate the intent of 35 U.S.C. § 289.

The Court notes Lewis acknowledges there is a split between courts as to whether to deduct taxes from the gross profit margin. (See Doc. #S83-B, at 31 n.172 (citing Schnadig, 620 F.2d at 1171; In Design v. K-Mart Apparel Corp., 13 F.3d 559 (2d Cir. 1994); Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502-03 (1968); Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45 (2d Cir. 1939)). See also Three Boys Music Group, Inc. v. Bolton, 212 F.3d 477, 487-88 (9th Cir. 2000). Lewis provided his opinion regarding taxes in the event the undersigned found taxes should be deducted.

Upon review, the Court agrees with Wink's argument. That is, if the tier finds Chico's bra products infringe Wink's patents, then Chico's profits should be assessed by its gross margin rather than by its profits after taxes. This will allow Wink to be compensated in whole rather than taxed twice. See Hanover Shoe, 392 U.S. at 503 ("As Hanover points out, since it will be taxed when it recovers damages from United for both the actual and the trebled damages, to diminish the actual damages by the amount of the taxes that it would have paid had it received greater profits in the years it was damaged would be to apply a double deduction for taxation, leaving Hanover with less income than

it would have had if United had not injured it."). The Court recognizes whether taxes are deducted in lost-profit damage analysis sometimes provides a party with a windfall. See Three Boys Music, 212 F.3d at 487-88. In the event there is a windfall in this case and assuming the tier finds an infringement occurred, the Court finds it is more equitable for the patent-holder, here Wink, to receive the windfall. Id. (noting when a court rejects the deduction of income taxes the intellectual property holder may receive a windfall by receiving a larger pre-tax award.). The motion is granted.

Accordingly, it is now

**ORDERED:**

Defendants' Daubert Motion to Exclude or Limit the Expert Testimony of Joyce Baran and Limit the Expert Testimony of Justin Lewis (Doc. #72) is **GRANTED in part and DENIED in part**. The motion is **granted** in that Lewis may not disgorge taxes. (See Doc. #S83-B, at 31-33). In all other respects, the motion is **denied**.

**DONE** and **ORDERED** in Fort Myers, Florida this 21st day of May, 2015.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record