UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHICO'S FAS, INC., a Florida
corporation

        Plaintiff,

v.                                    Case No:  2:13-cv-792-FtM-38DNF

ANDREA CLAIR, ANASTASIOS
KOSKINAS and 1654754 ONTARIO,
INC.,

        Defendants.
_____/

## ORDER[1]

    This matter comes before the Court on Plaintiff's Motion to Exclude the Testimony of Defendants' Damages Expert Adam Falconer (Doc. #71) filed on March 6, 2015. Defendants filed a response in opposition on March 23, 2015. (Doc. #86). This matter is ripe for review.

### Background

    This is a patent infringement lawsuit. Plaintiff Chico's Fas, Inc. ("Chico's") sues Defendants Andrea Clair, Anastasios Koskinas, and 1654754 Ontario, Inc. ("Wink") for declaratory judgment. (Doc. #61). The three counts are specifically declaratory judgment of non-infringement of the patents-in-suit (Count I); declaratory judgment of invalidity of the patents-in-suit (Count II); and declaratory judgment of unenforceability of the patents-

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

in-suit (Count III). (Doc. #61). Wink countersues Chico's. (Doc. #63). The three counterclaims are specifically Infringement of U.S. Patent No. 8,506,347 (Counterclaim I); Infringement of U.S. Patent No. 8,182,310 (Counterclaim II); and Infringement of U.S. Patent No. D622,478 (Counterclaim III). (Doc. #63).

Chico's and Wink sell camisole bras,[2] garments that combine traditional bras with a swatch of fabric that covers cleavage. Wink owns camisole bra patents. At issue in this litigation is Wink's design patent, United States Patent No. D622,478 ("D'478 Patent"), and two utility patents, United States Patent Nos. 8,506,347 ("'347" Patent") and 8,182,310 ("'310 Patent"). It is Wink's position that Chico's Oh My Gorgeous ("OMG") lace and smooth cami bras, as well as OMG lace when sold under the name "Bridget," infringes its patents.

To support its position, Wink retained Adam Falconer as a damages expert. Falconer provided an expert report that was filed under seal. (Doc. #S83-A). Falconer is an intellectual property consultant. (Doc. #86-2). He holds a Juris Doctor and Certificate in Law, Technology, and Management from Syracuse University College of Law. (Doc. #86-2). Falconer also holds an undergraduate degree in Management Information Systems from Iowa State University College of Business. (Doc. #86-2). Falconer served as a guest lecturer at University of Kansas School of Law, the University of San Francisco School of Law, and the University of Missouri-Kansas City School of Pharmacy on topics such as intellectual property commercialization, damages, policy, and valuation. (Doc. #86-2).

---

[2] At times throughout this order "camisole" bras are referred to as "cami" bras.

Falconer also worked with clients in the telecommunication and energy industries during an employment stint at Ernst & Young. (Doc. #86-2). Although his Ernst & Young job duties are not explained, Falconer indicates he has experience working in intellectual property licensing, where he managed intellectual property portfolios. (Doc. #86-2). Falconer has previously served as an expert in federal court, but he has not testified at trial within the last four years. (Doc. #86-2).

Chico's seeks to exclude portions of Falconer's expert opinion.

Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides, in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; see also United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (stating that expert testimony assists the trier of fact "if it concerns matters that are beyond the understanding of the average lay person" but "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citation omitted).

In Daubert v. Merrell Dow Pharm., Inc., the Supreme Court noted Rule 702 requires trial courts to serve as "gatekeepers" to guarantee speculative and unreliable opinions do not reach the jury. 509 U.S. 579, 589 n. 7 (1993). The objective of this gatekeeping function is to ensure expert witnesses employ in the courtroom the "same

3

level of intellectual rigor that characterizes the practice of an expert in the relevant field."
Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). A court's gatekeeping role is significant given "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." Frazier, 387 F.3d at 1260.

> To fulfill this role, the Eleventh Circuit instructs district courts to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citation omitted). In evaluating the admissibility of expert testimony, district courts "have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir.1999) (citation omitted). Nonetheless, it is not the function of the court to determine the ultimate persuasiveness of the testimony. See Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted).

<u>Discussion</u>

A. WHETHER FALCONER IS QUALIFIED TO RENDER OPINIONS ON FINANCIAL MATTERS?

Falconer intends to offer evidence on revenue, profits, margins, and costs of a publicly traded company. Chico's argues, however, Falconer is not qualified to testify about financial matters. Chico's emphasizes Falconer has no accounting, finance, or economic degrees, and is not a certified public accountant or certified valuation analyst. (Doc. #71-1, at 20, 30). Chico's further argues Falconer did not conduct his "total profit" profits as it relates to the design patent correctly and he improperly omitted fixed and indirect costs in calculating his profits. See Schnadig Corp. v. Gaines Mfg. Co., 620 F.2d

1166, 175 (6th Cir. 1980). Chico's also attacks Falconer's evasive answers related to costs in his deposition. (See, e.g., Doc. #71-1, at 26-28). Chico's argues Falconer is unable to address basic questions on what constitutes direct or indirect costs, and as a result he is unqualified to provide guidance on the issue to the jury. Other than the fact that he was once employed by companies that perform financial analyses, Chico's argues Falconer cannot point to anything in his background, education, or qualification that would suggest he has specialized knowledge or expertise on accounting issues that bear on the issues to be decided by the jury. Thus, Chico's argues Falconer should be precluded form presenting his opinions, especially opinions he was unable to proffer at his deposition.

The Court shares some of Chico's concerns. For example, it is unclear what Falconer's job duties were at Ernst & Young and thus what experiences he gained in this employment that could qualify him as an expert on damages. If Falconer testifies at trial, then Chico's will be permitted to *voir dire* the witness. Until then, the Court will reserve its ruling on Falconer's qualifications. The Court warns evasive answers may result in the witness being disallowed as an expert.

B.  WHETHER FALCONER'S REASONABLE ROYALTY ANALYSIS IS UNRELIABLE?

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Here, Falconer uses the reasonable royalty method to calculate damages. Thus, the question at issue, assuming Wink prevails on its patent claims, is what royalty rate would Wink received from Chico's through arms-length negotiation. See Multimedia Patent Trust v. Apple, Inc., No. 10-CV-2618-H (KSC), 2012

WL 5873711, at *2 (S.D. Ca. Nov. 20, 2012). This process involves an element of approximation and uncertainty but it does not permit methodological failings. Id. at *5. There are several factors one could consider when determining the reasonably royalties of a patent. See, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (1970).

Chico's takes issue with Falconer's reasonable royalty analysis. This is because Falconer asserts a reasonable royalty rate could range from 3.24 to 8.9 percent. Falconer adopts a rate of 3.35 based on a similarly situated case. See generally Branovations, Inc. v. Ontel Prods. Corp., Case No. 2:12-cv-306-FtM-29UAM. Chico's takes issue with Falconer adoption of a royalty base that is six times the base in the Branovations case. Chico's also takes issue with Falconer's reliance on evidence, such as Licensing Economics Review, RoyaltySource database, and articles to assert the royalty rate could be higher. The Court will address each specific argument below.[3]

### i. Whether opinion based on RoyaltySource Database should be excluded?

RoyaltySource is a database that contains a collection of licenses in diverse fields. Falconer seeks to offer opinions based on his search of the database. (Doc. #S83-A, at 22 ¶89). Falconer searched the RoyaltySource database for information related to bras, brassieres, combination brassieres and tank tops, camisoles, and camisole bras. (Doc. #S83-A, at 22 ¶89).

Chico's argues Falconer's search resulted in summarizing nine licenses but none of these licenses involved bras, brassieres, or a combination of bra and tank tops or camisoles. (Doc. #71-1, at 15). Falconer could not recall which, if any, of these license

---

[3] The Court will assume Falconer is qualified only for the purpose of addressing the other arguments.

agreements he read and analyzed. (Doc. #71-1, at 9). Falconer conceded a license agreement between related parties is less relevant, and five of the nine licenses Falconer relied upon are between related parties. A sixth license was not a license at all, but rather an option to license. Chico's argues these other licenses related to furniture products, enzymes for processing hemp, spider silk textiles, and the like are not comparable. Since Falconer's reliance is not tethered to the relevant facts and circumstances of this case, Chico's argues his opinion based on RoyaltySource database must be excluded.

Upon consideration, the Court wholly agrees with Chico's. The patents relied on by Falconer through the RoyaltySource database are not comparable to the patents-in-suit. Furniture, enzymes, spider silk, and the like have no bearing on the royalty estimations in this cami-bra case. Falconer's reliance on incomparable patents is flawed and unreliable. See GeorgiaPacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970) ("rates paid by the licensee for the use of other patents comparable to the patent in suit."); Atlas IP, LLC v. Medtronic, Inc., NO. 13-CIV-23309, 2014 WL 5741870, at *6 (S.D. Fla. Oct. 6, 2014) ("Thus, license agreements used in formulating a reasonably royalty model of damages must be comparable to the patent at issue.") (citing Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1385 (Fed. Cir. 2003)). The motion is granted as it relates to Falconer's opinion based on the RoyaltySource database.

   *ii.*   *Whether opinion based on LER data should be excluded?*

Falconer relies on Licensing Economics Review ("LER") data to suggest a form royalty rate in this case. LER data covers fifteen industries. (Doc. #S83-A, at 21 ¶88). Falconer argues he used the most relevant LER industries for his research, Consumer

Goods, Retail & Leisure. (Doc. #S83-A, at 22 ¶88). LER uses the same database as RoyaltySource. (Doc. #71-1, at 16).

Chico's avers if the best data available from RoyaltySource failed to return a single license summary related to bras, then the LER data is either duplicative or a less reliable source. In addition, Chico's argues the LER data is even broader than the RoyaltySource database in that Falconer used an expansive search of all "consumer goods, retail and leisure" to obtain license data from LER. (Doc. #71-1, at 17). The data received only provides generalities of "royalty rates" for a broad category of goods. Chico's argues there is no way to analyze what types of goods are actually represented by the LER data relied on by Falconer. (Doc. #71-1, at 17). Chico's argues Falconer made no effort to acquire the licenses filtered by LER in order to gauge comparability of the licenses. (Doc. #71-1, at 17). Also, Falconer concedes LER data is "less relevant" than the RoyaltySource data. (Doc. #71-1, at 18). Chico's contends since it is impossible to determine from LER what licenses are used to arrive at the rates provided, or to determine the terms of those specific licenses, Wink is unable to prove such data is comparable to the hypothetical licenses at issue in this lawsuit.

Upon consideration, the Court agrees with Chico's. Like Falconer conceded, the LER data is less reliable than the RoyaltySource data. (Doc. #71-1, at 18). The LER data is too broad and not comparable to the patents-in-suit. Consequently, such evidence is purely unreliable. The Court's finding is in good company. See IP Innovation L.L.C. v. Red Hat, Inc., 705 F.Supp.2d 687, 691 (E.D. Tx. 2010) (finding reliance on broad LER data was not comparable to the patents-in-suit); see also ResQNet.com, Inc. v. Lansa,

Inc., 594 F.3d 860, 869-70 (Fed. Cir. 2010). The motion is granted as it relates to Falconer's opinion based on the LER data.

      *iii.*     *Whether opinion based on the 2014 licensing letter royalty trends report should be excluded?*

Falconer also relied on a Licensing Letter Royalty Trends Report. Falconer limited his use of the report to hosiery.[4] (Doc. #86, at 7). According to Chico's, this report provides generic industry data across a 10 year period, without analysis of a particular product line. Chico's argues Falconer did not review a single license cited by the report or identify any parties to any licenses. (Doc. #71-1, at 18). Chico's argues there is no way to know how many licenses are used to generate the data or details about any of the licenses. (Doc. #71-1, at 18). Chico's argues Falconer could not point to anything definitively that establishes the relevance of any of the data in the report to this case. (Doc. #71-1, at 19). Chico's argues opinion based on this report should be excluded.

Upon consideration, the Court agrees with Chico's. Since the report covers generic evidence, rather than a specific product line such as bras, the evidence is not reliable. The Court takes issue, for instance, with how there is no way of knowing how many licenses are used to generate the data or details about the licenses. The motion is granted as it relates to Falconer's opinion based on the 2014 licensing letter royalty trend report.

      *iv.*     *Whether opinion based on KPMG 2012 article "Profitability and Royalty Rates across Industries: Some Preliminary Evidence" should be excluded?*

Falconer also relies on a KPMG 2012 article to form royalty opinions. The KPMG article relies on RoyaltySource data. (Doc. #71-1, at 20). Falconer asserts he limited his

---

[4] More specifically, Falconer relied on the royalty rates listed in the category of fashion, the subcategory of apparel, and then additional subcategory of hosiery. (Doc. #86, at 7).

use of the KPMG data to a royalty rate which was generally 15 percent of gross profit. (Doc. #S83-A, at 23 ¶91).

Chico's argues like the LER data, there is no way to review the licenses analyzed by KPMG or confirm whether any of the licenses relate to bras. (Doc. #71-1, at 21). The KPMG article considered 14 different industries and ultimately determined a 15 percent benchmark royalty rate could be used in nearly every application. (Doc. #71-1, at 22). Chico's argues the only difference between the KPMG article and the 25 percent rule of thumb rejected by the Federal Circuit is the number. (See Doc. #71-1, at 23 (Falconer used the 15 percent benchmark from KPMG and applied it to Chico's gross margins)). See Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d. 1292, 1315 (Fed. Cir. 2011).

Upon consideration, the Court agrees with Chico's arguments. The KMPG article is not reliable because there is no way to understand whether any of the licenses it used to form its conclusions related to bras or similar products. In addition, a contested general 15 percent rule of thumb is not appropriate to determine a baseline royalty rate in a hypothetical negotiation. The Federal Circuit has rejected a parallel 25 percent rule of thumb because "it fails to tie a reasonable royalty base to the facts of the case at issue." See id. Falconer's reliance on KMPG's 15 percent rule of thumb is similarly flawed in that it fails to tie a reasonable royalty base to the facts of the case at issue. See IP Innovation L.L.C., 705 F. Supp. 2d at 691 (finding reliance on LER average royalty rate to be unreliable). The motion is granted as it relates to Falconer's opinion based on the KPMG 2012 article.

> *v.    Whether opinion based on "Wink's Expectations" should be excluded?*

At the time of the hypothetical negotiation, May 22, 2012, Wink had not created a formal licensing policy. (Doc. #S83-A, at 20 ¶79). Now, however, Wink would expect or desire to license the patents-in-suit between seven to ten percent. (Doc. #S83-A, at 20 ¶¶79-80). Falconer relies on this expectation to reach his opinion. (Doc. #S83-A, at 20 ¶¶79-80).

Chico's argues this reliance is improper because he cannot assert where the expectations are based. (Doc. #71-1, at 29-30). Chico's argues regurgitating a client's naked and baseless demands is not offering an expert opinion because one does not need any specialized knowledge to make a royalty demand.

Upon consideration, the Court finds the motion is due to be denied. Falconer is permitted to rely on Wink's testimony and even hindsight assertions. Cf. IP Innovations L.L.C., 705 F. Supp. 2d at 689 (excluding an expert's arbitrary royalty rate choice). Although such evidence may be weak, the Court does not find exclusion is proper. Chico's position will be better served by vigorous cross examination of Wink's witnesses, including Falconer, because "[a] reliable reasonable royalty calculation depends on trustworthy evidence of both the royalty base and the royalty rate." Id. at 689. The motion is denied as it relates to Falconer's opinion based on Wink's expectations.

C.  WHETHER OPINION BASED ON SURVEY RESULTS SHOULD BE EXCLUDED?

Falconer reviewed approximately 550 customer reviews of the Chico's cami-bras at issue in this case. (See Doc. #S83-A, at 10-11 ¶34). The reviews were located on Chico's website.[5] Falconer concluded the patents-in-suit have four major benefits:

---

[5] The reviews were available on the Soma website. Soma is a division of Chico's.

convenience, usability, comfort, and innovative product.  (See Doc. #S83-A, at 10 ¶33). Falconer then reviewed the customer reviews on Chico's website to determine whether the Chico's cami-bras also share these four major benefits. (See Doc. #S83-A, at Exh. 9).

Chico's argues Falconer's reliance on its online customer reviews is improper. Chico's argues such reviews were unsolicited and represented less than one percent of the purchases of the Chico's cami-bras. Since Falconer did not perform a statistical analysis to determine whether his opinions on the customer reviews were statistically significant and was not aware of any reference or journal supporting his methodology, Chico's asserts his use of the customer reviews is improper. (See Doc. #71-1, at 8, 24). In addition, Chico's argues Falconer's analysis of the four benefits he chose is unscientific, subjective, and overlapping. (See Doc. #71-1, at 6-7). Chico's argues Falconer is "not qualified to divine the beliefs of unsolicited reviewers on Chico's website to interpret benefits of a product through these reviews."

Upon consideration, the Court finds Chico's arguments go to the weight of the evidence, rather than admissibility. The Court does not find Falconer's review of customer surveys available on Chico's public website problematic for admissible purposes. Chico's arguments against Falconer's use of the customer survey information is best left for cross-examination and for the tier of fact to decide. See generally Morris v. ADT Sec. Servs., Inc., No. 07-809CIV, 2009 WL 3334915, at *2 (S.D. Fla. July 27, 2009) (finding's expert opinion, despite untestable and not peer-reviewed, was admissible).

D. Whether opinion on total royalties should be excluded for failing to apply the proper royalty base?

Falconer assesses the royalty rate to be 3.35 percent. Falconer applied this rate to the entire cami-bra. Chico's argues foam bras, underwire bra, and tank tops each individually are well known articles in the garment industry. Since, Falconer assesses the royalty rate to the entire Chico's cami-bras rather than the fabric overly that is claimed to be inventive, Chico's argues this is improper because he failed to apportion out the non-patented elements of the bra. Moreover, Chico's argues Falconers failed to consider other non-infringing alternative bras that could impact his analysis. (Doc. #71-1, at 31-32).

The Court agrees with Chico's. Reasonable royalty damages are determined by "the minimum amount of infringement damages 'adequate to compensate for the infringement.'" Atlas IP, LLC, 2014 WL 5741870, at *3 (quoting Laser Dynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 66 (Fed. Cir. 2012) (in turn quoting 35 U.S.C. § 284)); Ericsson, Inc. v. D-Link Sys., 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features.")). Therefore, even though 35 U.S.C. § 289 asserts an infringer is liable to a patent owner to the extent of his total profits, such profits are limited to only adequately compensate for infringement so that royalties are not based on the entire product "but instead on the smallest salable patent-pricing unit." Laser Dynamics, 694 F.3d at 67; see also 35 U.S.C. § 289. Since Falconer did not use the narrow exception, the entire market value rule, did not show that the demand for the entire product is attributable to the patented feature, and blatantly failed to consider other non-infringing alternative bras or non-infringing portions of the bra,

such review is improper. See generally Atlas, IP, LLC, 2014 WL 5741870. The Court, however, will allow Falconer to remedy this mistake for purposes of trial.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion to Exclude the Testimony of Defendants' Damages Expert Adam Falconer (Doc. #71) is **GRANTED in part** and **DENIED in part**:

    a.  The motion is **granted** to the extent Falconer cannot provide opinions relying upon the RoyaltySource database, LER, KPMG 15 percent rule of thumb, and 2014 licensing letter royalty trend report.

    b.  The motion is **granted** to the extent Falconer must tailor his total royalty analysis to only adequately compensate for infringement. Falconer is permitted to remedy this mistake for trial purposes.

        1.  Falconer shall provide an amended expert report to Chico's no later than **June 17, 2015**.

        2.  If Chico's needs to depose Falconer, thereafter, it may do so no later than **July 10, 2015**. The deposition shall not exceed the scope of the total royalty analysis and shall not exceed more than three hours.

        3.  Any other motions including motions *in limine* related to Falconer's amended expert report and deposition will be due no later than **July 17, 2015**, and responses to such motions will be due no later than **July 24, 2015**.

    c.  The Court **reserves** ruling as it relates to Falconer's qualifications.

    d.  The motion is **denied** in all other respects.

**DONE** and **ORDERED** in Fort Myers, Florida this 3rd day of June, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record