UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHICO'S FAS, INC., a Florida corporation,

       Plaintiff,

v.

Case No: 2:13-cv-792-FtM-38MRM

ANDREA CLAIR, ANASTASIOS KOSKINAS and 1654754 ONTARIO, INC.,

       Defendants.
_____/

### ORDER[1]

This matter comes before the Court on Plaintiff Chico's Fas, Inc.'s ("Chico's") Motion for Reconsideration (Doc. #110) filed on June 26, 2015. Defendants Andrea Clair, Anastasios Koskinas, and 1654754 Ontario, Inc. (collectively referred to hereinafter as "Wink") filed a Response in Opposition on July 10, 2015. (Doc. #116). This matter is ripe for review.

### Standard

Reconsideration of a court's previous order is an extraordinary remedy, and thus, is a power that should be used sparingly. *Carter v. Premier Rest. Mgmt.*, No. 2:06-CV-212-FTM-99DNF, 2006 WL 2620302, at *1 (M.D. Fla. Sept. 13, 2006) (citing *Am. Ass'n of People with Disabilities v. Hood*, 278 F.Supp.2d 1337, 1339 (M.D. Fla. 2003)). The

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

courts have "delineated three major grounds justifying reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." *Susman v. Salem, Saxon & Meilson, P.A.*, 153 F.R.D. 689, 904 (M.D. Fla. 1994).

## Discussion

Chico's asks the Court to reconsider its June 19, 2015 Order that denied Chico's Motion for Summary Judgment. (Doc. #107). In doing so, Chico's presents three arguments as to why reconsideration is proper. First, Chico's contends references that might qualify as prior art do not need to exist at least one year prior to the patent-at-issue's priority date. Second, Chico's avers a reference may anticipate a single claim. And third, Chico's argues invalidity and inequitable conduct are separate and distinct claims, with each requiring distinct analysis. The Court finds good cause to grant Chico's Motion, and will address each argument in turn below.

### A. Prior Art

Chico's highlights two aspects of the Court's prior art analysis in the June 19, 2015 Order that warrant reconsideration. The first relates to the Court's statement that "[t]he relevant single prior art reference must have existed at least one year before the patent application at issue." (Doc. #107 (citing 35 U.S.C. § 102(b)(1))). In making this statement, the Court relied on 35 U.S.C. § 102, as amended by the America Invents Act[2] ("AIA"). The Court erred in this regard in that it should have, and will now, consider Chico's arguments in light of 35 U.S.C. § 102, as amended in 2006.[3] The second aspect relates

---

[2] Leahy-Smith America Invents Act, Pub. L No. 112-39, 125 Stat. 284 (2011).
[3] Section 102, as amended by the AIA, applies only to patents with an effective filing date on or after March 16, 2013. *See* AIA § 3(n)(1), 125 Stat. at 293. Any reference to § 102 herein is to 35 U.S.C. § 102 (2006).

2

to the Court's insinuation that a prior art reference needs to contain every limitation of every claim of the patents-at-issue. Chico's is correct that the Court erred in this regard, as a single reference need only contain each limitation of a single claim. *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1224 (Fed. Cir. 2014) ("A patent claim is anticipated if a single prior art reference expressly or inherently discloses every limitation of the claim."). When these issues are reconsidered, the Court finds partial summary judgment in Chico's favor is warranted.

Chico's focuses on three bras it considers to be prior art references: the Natori Zen Floral ("Floral"), the Natori Peony Contour ("Contour"), and the Somma Brianna ("Brianna"). These three bras, as Chico's explains, qualify as priority art under both 35 U.S.C. § 102(a) and §102(g)(2). Because these sections require separate and distinct analysis, the Court will address each individually in turn.

1. *35 U.S.C. 102(a)*

It is well established that "a person cannot patent what was already known to others." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) (citing 35 U.S.C. § 102 (a)). This rule arose because "[i]f the invention was known to or used by others in this country before the date of the patentee's invention, the later inventor has not contributed to the store of knowledge, and has no entitlement to a patent." *Id.* Section 102(a) codifies this reasoning by providing a basis to invalidate a patent if the invention was known or used by others in this country. 35 U.S.C. §102(a). In order to be "known," "the knowledge must be publicly accessible . . . and it must be sufficient to enable one with ordinary skill in the art to practice the invention." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) (internal citations

3

omitted). And "[f]or prior art to anticipate because it has been 'used,' the use must be accessible to the public." Id. (citation omitted).

Chico's argues the Floral bra was offered to "buyers of all major department stores" during 2006 and 2007, rendering it prior art under § 102(a) because it "was known and/or used by others in this country more than a year before the [patents-at-issue] were filed." (Doc. #67 at 19). Absent from this argument, however, is clear and convincing evidence illustrating how the Floral bra contains every limitation of at least one claim of the patents-at-issue. See *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently."). Even if the Floral bra meets the publication requirement of § 102(a), that alone is not enough to invalidate the patents-at-issue. Chico's must also provide analysis detailing how the Floral bra contains all limitations of at least one claim of the patents-at-issue. Without this analysis, summary judgment on the basis that the Floral bra anticipates the patents-at-issue under § 102(a) must be denied.

Chico's § 102(a) argument as to the Brianna bra suffers the same flaw. The Court is without evidence detailing how the Brianna bra encompasses every limitation of at least one claim of the patents-at-issue. Beyond that deficiency, Chico's also fails to illustrate that the Brianna bra was publicly accessible before the patents-at-issue's priority date.[4] Chico's only alerts the Court that the Brianna bra was developed on July 16, 2007. (Doc. #67 at 18). Without analysis explaining how the Brianna bra encompasses every

---

[4] As part of its Brianna bra § 102(g)(2) argument, Chico's avers that it placed its first purchase order for the Brianna bra in November 2007 and that the Brianna bra was sold in stores beginning in 2008. (Doc. #67 at 20). Even if the Court uses these dates for the Brianna bra § 102(a) argument, summary judgment is not warranted on this issue based on the lack of analysis regarding what claims the Brianna bra anticipates.

limitation of a claim of the patents-at-issue or when the Brianna bra became publicly accessible, summary judgment on the basis that the Brianna bra anticipates the patents-at-issue under § 102(a) must be denied.

Chico's final § 102(a) argument, focusing on the Contour bra, fares no better. Chico's fails to show that the Contour bra was publicly accessible, either by use or knowledge, before the patents-at-issue's priority date. Chico's simply avers that the Contour bra was developed on January 11, 2008. But, as discussed above in the Brianna bra analysis, providing only a development date without a public accessibility date is not enough. Without analysis illustrating that the Contour bra was publicly accessible before the priority date of the patents-at-issue, summary judgment on the basis that the Contour bra anticipates the patents-at-issue under § 102(a) must be denied.

### 2. 35 U.S.C. § 102(g)(2)

Pursuant to § 102(g)(2), "[a] person is not entitled to a patent if 'before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it.'" *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1331 (Fed. Cir. 2001) (citation omitted). Under this section, a movant may invalidate an existing patent by establishing a prior invention. To do so, the movant must illustrate "(1) it reduced its invention to practice first . . . or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1383 (Fed. Cir. 2011) (citation omitted; alteration in original).

The former requires a showing that the movant "(1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention

would work for its intended purpose." *Id.* (citation omitted). Whereas the latter is achieved "only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003) (citation omitted). And then that idea must be reduced to practice. *Id.*

Chico's argues the Floral, Brianna, and Contour bras were all invented prior to the invention asserted in the patents-at-issue,[5] rendering the patents-at-issue invalid under § 102(g)(2). (Doc. #67 at 19-20). Even if the Court determined the Floral and Brianna bras were invented prior to the invention asserted in the patents-at-issue, Chico's argument as to these two bras fails for the same reasons articulated in the § 102(a) analysis: Chico's fails to show how either bra contains every limitation of at least one claim of the patents-at-issue. *See MEHL/Biophile Int'l Corp.*, 192 F.3d at 1365. Without such analysis, summary judgment on the basis the Floral and Brianna bras anticipate the patents-at-issue under § 102(g)(2) must be denied.

Chico's corrects this deficiency for the Contour bra, as it submitted an expert report by Joyce Baran. (Doc. #67 at 21 (citing Doc. #69-13)). In the report, Baran opines that the Contour bra contains every limitation of every claim of the '347 Patent and every limitation of every claim of the '310 Patent, except for dependent claims 3 and 10. (Doc. #69-13 at 77-144). Wink disagrees, pointing to the rebuttal report of its own expert, Karin Yngevsdotter. (Doc. #91 at 11). But Yngevsdotter fails to consider whether the Contour

---

[5] The Court understands that each claim of the patents-at-issue constitutes a separate invention. *See Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148 (Fed. Cir. 2004) ("Each claim defines a separate invention, whether or not written in independent form. . . ."). The Court's reference to the "invention asserted in the patents-at-issue" refers to each of the claimed inventions of the patents-at-issue, which share the same conception and reduction to practice dates.

6

bra contains every limitation of at least one claim of the patents-at-issue. Instead, she summarily dismisses the issue by stating that she was "informed that this bra is not prior art to the asserted claims." (Doc. #91-10 at 14).

Wink also takes issue with Baran's report because she states elsewhere that the Contour bra "renders obvious each asserted claim of the '347 and '310 Patents." (Doc. #91 at 12). This is significant, according to Wink, because "Baran's assertion of obviousness and no anticipation is an admission that the [Contour bra] is missing at least one element of the claims." (Doc. #91 at 12). The Court disagrees and will not discount Baran's opinion as to anticipation solely because she also opines on obviousness. "[I]t is for the litigants – not the [C]ourt – to make the strategic decision as to whether to assert one, both, or neither of these two defenses[.]" *Cohesive Technologies, Inc. v. Waters Corp.*, 543 F.3d 1351, 1365 (Fed. Cir. 2008). All that is required for the Court to consider Baran's opinion as to anticipation is that she "introduce[] a prior art reference and make[] a non-frivolous argument that each and every limitation of a claim is found, expressly or inherently, in that single prior art reference[.]" *Id.* After all, not even a verdict of nonobviousness necessarily forecloses anticipation. *Id.* at 1364.

Wink's failure to rebut Baran's opinion is significant because there is uncontested, clear and convincing evidence that the Contour bra contains every limitation of every claim of the '347 Patent and every limitation of nearly every claim of the '310 Patent. The only issue before the Court then is whether the Contour bra qualifies as a prior invention. On this issue, Chico's argues that Dana-Co, the owner of the Contour bra, was the first party to conceive of the invention asserted in the patents-at-issue and then exercised reasonable diligence in reducing that invention to practice. (Doc. #67 at 20). To support

7

this contention, Chico's presents an affidavit from Dana-Co's President, Zvi Ertel, and accompanying attachments ("Ertel Affidavit"). (Doc. #69-11).

In the affidavit, Ertel states he is both President and custodian of records of Dana-Co. (Doc. #69-11 at 2, ¶ 2). He further affirms that the attachments are true and correct copies of business records of Dana-Co that are made and kept in their ordinary course of business. (Doc. #69-11 at 2, ¶ 2). And that the attached records were made at or near the time of occurrence of the matters set forth therein, by persons with knowledge of those matters on behalf of Dana-Co, which is their regular practice.[6] (Doc. #69-11 at 3, ¶ 2). The attached documents include (1) a Style Request for the Contour bra; (2) a Bill of Materials for the Contour bra; (3) a Sketch Map for the Contour bra; (4) Fit Comments for the Contour bra; (5) a Final Pad Spec for the Contour bra; and (6) an email from a Dana-Co employee to Dana-Co's contract manufacturer that included all of the previous documents mentioned. (Doc. #69-11 at 38-43). All of the attached documents are dated January 11, 2008. (Doc. #69-11 at 38-43).

These documents illustrate that the Contour bra was conceived, at the latest, on January 11, 2008. This is because the technical drawings and the other corroborating, attached documents relating to the Contour bra were so "sufficiently precise that a skilled artisan could carry out the invention without undue experimentation." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1230 (Fed. Cir. 1994). These documents also illustrate that Dana-Co reduced its Contour bra to practice in a reasonably diligent

---

[6] This certification is notable because Wink argues elsewhere that the Ertel Affidavit constitutes inadmissible hearsay. Chico's, however, argues that this affidavit qualifies as self-authenticating evidence under Federal Rule of Evidence 902(11) and as an exception to the rule against hearsay under Rule 803(6). The Court finds Chico's argument persuasive.

8

manner by having its contract manufacturer produce the bra, as described in the technical drawings, so that it could "show the buyers at market." (Doc. #69-11 at 38).

Wink does not contest the Ertel Affidavit for trustworthiness, but rather argues there is nothing in the Ertel Affidavit illustrating that the Contour bra "is structurally the same" as the patents-in-suit. (Doc. #91 at 11). This argument is misplaced. Chico's does not rely on the Ertel Affidavit to illustrate the Contour bra contains every limitation of nearly every claim of the patents-at-issue; that was the purpose of Baran's report. Chico's presents the Ertel Affidavit to establish the factors necessary for the Contour bra to constitute a prior invention under § 102(g)(2) – conception and reduction to practice. Importantly, Wink fails to contradict the Ertel Affidavit or the attachments thereto. And the Court finds the Ertel Affidavit and accompanying attachments are sufficient to establish January 11, 2008, as the date of conception and reduction to practice for the Contour bra.

As additional support for the reduction to practice element, Chico's provides an affidavit from its Senior Manager of Product Development, Emily Suess, who states she has knowledge the Contour bra was later sold in stores. (Doc. #69-12). Wink takes issue with this affidavit because it was produced after discovery closed. (Doc. #91 at 11). In making this argument, Wink does not rely on Federal Rule of Civil Procedure 37(c)(1), averring that Chico's failed to disclose Suess as a witness, and therefore is not allowed to use the affidavit in support of its Motion. Instead, Wink simply argues that the affidavit is improper because it arose after the close of discovery. But the Court finds this argument unpersuasive. Nevertheless, the Court finds the Ertel Affidavit, on its own, conclusively establishes January 11, 2008, as both the conception and reduction to practice date for the Contour bra.

Having determined the Contour bra constitutes an invention with a priority date of January 11, 2008, the Court must now determine whether this priority date precedes the priority date of the invention asserted in the patents-at-issue. Chico's avers the invention asserted in the patents-at-issue has a priority date of February 28, 2008, at the earliest. (Doc. #93 at 6). Wink disagrees. Wink argues it has established an earlier priority date "by providing a detailed description with supporting documents of the conception and reduction to practice of the claimed invention in its responses to one of Chico's interrogatories." (Doc. #91 at 10 (citing Doc. #91-9)).

But a review of that interrogatory answer reveals no supporting documentation until the company Bra-Makers Supply was contacted in May 2007. (Doc. #91-9). This is troublesome because absent evidentiary support, Wink's interrogatory answer relating to the time before May 2007 amounts to nothing more than the testimony of its owners, Clair and Koskinas, who are the listed inventors on the patents-at-issue. And there is a well-settled rule in the Federal Circuit that conception cannot be proven solely on the testimony of inventors; there must be some corroborating evidence. *See Singh v. Brake*, 317 F.3d 1334, 1340-41 (Fed. Cir. 2003) (noting that an inventor must proffer evidence corroborating their conception testimony). This rule quiets the "concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to . . . maintain an existing patent." *Id.* at 1341.

A review of the corroborated portion of the interrogatory answer reveals two statements pertinent to conception.[7] (Doc. #91-9). The first provides, "Bra-Makers

---

[7] Wink's interrogatory answer cites four documents that were exchanged between the Parties in discovery. (Doc. #91-9 at 4-5). But Wink fails to identify or produce those documents to the Court, and instead relies solely on its interrogatory answer.

10

Supply located at 308 Ottawa Street North, Hamilton Ontario, Canada, was contacted by the inventors on May 7, 2007, to prepare another prototype." (Doc. #91-9 at 4). The second statement notes, "[a] final prototype (available for inspection) of an embodiment of the invention of the Asserted Patents was made on or about February 20, 2008[,] at the direction of the inventors by Bra-Makers Supply located at 308 Ottawa Street North, Hamilton Ontario, Canada." (Doc. #91-9 at 4-5).

The unproduced documents cited in Wink's interrogatory answer are not the only documents related to the conception of the invention asserted in the patents-at-issue. In support of its Motion, Chico's provides a copy of a journal created and maintained by the owner of Bra-Makers Supply, Beverly Johnson, that documented each of her meetings with Clair, the only inventor of the patents-at-issue with whom Johnson ever had contact. (Doc. #69-4).[8] The first entry in the journal relates to Johnson's initial meeting with Clair,[9] during which Clair described her idea as a "bra with cami insert sewn in wired bra [with] foam cups." (Doc. #69-4 at 4). Johnson testified that Clair had already attempted to create her desired product by using a Le Perla bra with an insert, which she brought to the initial meeting with Johnson. (Doc. #69-3 at 39:6-8). This attempted product entailed a piece of fabric that was hand sewn down the "V" between the foam cups of the bra. (Doc. #69-3 at 40:1-4). Based on the design explained to her, Johnson sketched the following:

---

[8] Notably, this journal was made contemporaneously as the invention asserted in the patents-at-issue was eventually conceived. *See Burroughs*, 40 F.3d at 1228 (noting the preferable corroborating evidence is a contemporaneous disclosure).

[9] Although this entry is not dated, Johnson testified that she does not begin making a notebook for her client until she starts working with them, and that she did not begin working with Clair until October 2007. (Doc. #69-3 at 132:20-21).

11



(Doc. #69-4 at 5; Doc. #69-3 at 53:7-9).

After extensive experimentation and thinking about the design, Johnson "knew that an insert was not going to work." (Doc. #69-3 at 56:23-25). Johnson primarily based this decision on the fact that the insert design would work only if it was hand sewn, and the factories that would be required to produce the finished product were "never going to hand sew it." (Doc. #69-3 at 58:2-4). As a result, sometime between January 15 and January 30, 2008, Johnson came up with the idea to try a full cover over the front of the cups, instead of the insert-based design that Clair had initially desired. (Doc. #69-3 at 146:13-15). This new design entailed stretching fabric across the front of the entire cups, rather than finishing the cups and placing an insert between them. (Doc. #69-3 at 146:16-147:16). Johnson's testimony as to this new design matches up with her journal entry dated January 21, 2008, where she spent several pages describing this new design and what it entailed. (Doc. #69-4 at 8-11). On one of these pages, Johnson sketched the new design:



(Doc. #69-4 at 11). This new design was then sent to a contract manufacturer who created a prototype, which Clair approved on February 28, 2008. (Doc. #69-4 at 13). Wink fails to present any evidence that contradicts Johnson's journal or her deposition testimony.

Because conception requires the idea be "so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation," Singh, 317 F.3d at 1340, it is clear that the invention asserted in the patents-at-issue was not conceived until January 15, 2008, at the earliest. Before this date, the idea to use a full cover design, rather than an insert-based design, was never so definite that only ordinary skill was required to reduce it to practice. The full cover design arose after months of experimentation with the insert-based design, which yielded the determination that the insert-based design was not commercially feasible. And most importantly, it is the full cover design, and the full cover

design only, that includes every feature of the invention asserted in the patents-at-issue. See Coleman v. Dines, 754 F.2d 353, 359 (Fed. Cir. 1985).[10]

With a priority date of January 11, 2008, for the Contour bra and a priority date of January 15, 2008, at the earliest, for the invention asserted in the patents-at-issue, the Court finds the Contour bra anticipates every limitation of every claim of the '347 Patent and every limitation of claims 1-2, 4-9, and 11-20 of the '310 Patent. Summary judgment on this issue is awarded in Chico's favor. Accordingly, the entirety of the '347 Patent and claims 1-2, 4-9, and 11-20 of the '310 Patent are invalidated.

### B. Inventorship

Next, Chico's asks the Court to reconsider its inventorship analysis on the basis that it overlooked Chico's § 102(f) argument. The Court acknowledges it erred in this regard. In addressing whether the patents-at-issue were invalid due to improper inventorship, the Court focused solely on unenforceability due to inequitable conduct and neglected Chico's additional argument that the patents-at-issue are invalid under § 102(f). The Court therefore will now address Chico's § 102(f) argument.[11]

---

[10] At this point, the burden of production shifts to Wink to produce evidence sufficient to create a genuine issue of material fact as to whether Dana-Co abandoned, suppressed, or concealed the Contour bra invention. See Dow Chem. Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1339 (Fed. Cir. 2001). Wink fails to even attempt to produce evidence indicating as much, and therefore the Court's analysis need not go further.

[11] Wink argues it lacked proper notice that Chico's pursued improper inventorship under § 102(f). According to Wink, Chico's did not specifically allege invalidity based on improper inventorship under § 102(f) in any of its pleadings or answer to counterclaims. Nor did Chico's assert § 102(f) as an invalidity contention under the invalidity contention deadline set out in the Case Management Scheduling Order. The Court disagrees. Chico's has always asserted an invalidity defense under § 102, dating back to its original complaint filed nearly two years ago. This defense was also asserted in both Chico's Initial Contentions and First Amended Contentions. Although a specific subsection is not mentioned in any of these documents, the entirety of § 102 is. Wink could have sought clarification as to what subsection of § 102 Chico's was planning to use, but it failed to do so. Not to mention, Chico's clearly asserted § 102(f) arguments in its Motion for Summary Judgment. (Doc. #67 at 14-16). Wink never raised this issue in its Response, and seemingly responded to the § 102(f) argument by citing § 256, which is not available for inequitable conduct errors. Simply stated, Wink had more than sufficient notice of Chico's § 102(f) argument. See Medtronic Xomed, Inc. v. Gyrus ENT LLC, 440 F.Supp.2d 1300, 1319 (M.D. Fla. 2006)

Pursuant to § 102(f), a person is entitled to a patent unless he did not invent the subject matter sought to be patented. But if a patent has already been issued, the inventors named are presumed to be correct. *See Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009). Because of this presumption, any party asserting improper inventorship under § 102(f) "must meet the heavy burden of proving its case by clear and convincing evidence." *Id.* (citation omitted). Among the available grounds for improper inventorship under § 102(f) are misjoinder and nonjoinder. Misjoinder occurs when a person is named on a patent as an inventor even though he did not contribute to the claimed invention. *See, e.g., Schulze v. Green*, 136 F.3d 786, 792 (Fed. Cir. 1998) (entertaining a third-party's challenge to inventorship under § 102(f) based on misjoinder). Whereas nonjoinder occurs when a person who contributed in a significant manner to the claimed invention is not named as an inventor. *See, e.g., Natron*, 558 F.3d at 1356 (entertaining a challenge to inventorship under § 102(f) based on nonjoinder).

Chico's asserts both nonjoinder and misjoinder arguments under § 102(f). The first of these arguments avers that the patents-at-issue should be invalidated under § 102(f) because Johnson contributed in a significant manner to the invention asserted in the patents-at-issue, but Clair and Koskinas failed to name her as a co-inventor in any of the patents. This argument is persuasive. The Court has already detailed how Johnson was an integral part of the conception of the invention asserted in the patents-at-issue. Before Johnson's involvement, Clair sought a cami bra design that included finished cups with a fabric insert placed between them. (Doc. #69-4 at 4; Doc. #69-3 at 39:6-8). Having

---

(finding patentee had sufficient notice of § 102(f) invalidity defense even though accused infringer failed to mention this defense in response to an interrogatory asking for every basis supporting infringer's claim the patents-at-issue were invalid).

significant experience in bra design and manufacturing, Johnson knew this insert-based design was not commercially feasible. Johnson eventually came up with the commercially-feasible full cover design, which she then presented to Clair. (Doc. #69-4 at 8-11; Doc. #69-2 at 60:12-21). Clair approved this new full cover design, and a prototype was built shortly thereafter. (Doc. #69-4 at 13). It is this full cover design, and this full cover design only, that is the invention asserted in the patents-at-issue.

No one contests whether Clair is an inventor of the patents-at-issue. Because she is listed as such on the patents-at-issue, the Court will abide by the well-settled presumption and assume this is correct. See *Winbond Electronics Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1371 (Fed. Cir.), opinion amended, 275 F.3d 1344 (Fed. Cir. 2001) (noting that there is a presumption that a patent's named inventors are the true inventors). That said, there is no question that Johnson did more than explain concepts to Clair that are well known in the current state of the art. She contributed in a significant manner to both the conception and reduction to practice of the full cover design, the invention asserted in the patents-at-issue, and this contribution is not insignificant in quality when it is measured against the dimension of the full invention. On these facts, the Court finds Johnson is a co-inventor of the invention asserted in the patents-at-issue.

Chico's also argues the patents-at-issue should be invalidated under § 102(f) because Koskinas is named as an inventor on the patents-at-issue even though he did not contribute to the invention. Although there is a presumption that Koskinas is a true inventor of the patents-at-issue because he is listed as such, see *Winbond,* 262 F.3d at 1371, Koskinas' deposition and other evidence in the record defeats this presumption. Most notably, Koskinas was unable to highlight a single contribution that he made to the

invention asserted in the patents-at-issue. (Doc. #69-9 at 18:9-22, 35:24-38:25, 51:1-56:14, 57:22-60:23). He merely concluded that he contributed to "all of it in some way or another." (Doc. #69-9 at 18:17-18).

Beyond Koskinas' own testimony, Clair was unable to pinpoint any precise contribution Koskinas made either. (Doc. #69-2 at 150:13-153:15). But Clair did acknowledge that she presented the idea for a bra with cleavage coverage to Koskinas, and that this idea came to her independently. (Doc. #69-2 at 62:4-15, 121:22-122:8; Doc. #69-9 at 10:24-12:15). The record is devoid of any evidence that Koskinas was involved in developing even the general idea for the invention asserted in the patents-at-issue. Moreover, the Court has already determined that the invention asserted in the patents-at-issue was not conceived until Johnson developed the full cover design. With this in mind, it is notable that Johnson never had any contact with Koskinas and did not know who he was.[12] (Doc. #69-3 at 82:1-16). If Koskinas did not help Clair develop the general idea for the invention asserted in the patents-at-issue, or help Johnson later develop the full cover design, which marked the invention's conception, it is puzzling how Koskinas contributed at all.

Based on these undisputed material facts, it cannot be said that Koskinas contributed in a significant manner to either the conception or reduction to practice of the invention asserted in the patents-at-issue – the full cover design. Any alleged contribution he might have made – i.e., watching Clair try on bras and commenting on them – is undoubtedly insignificant in quality when it is measured against the dimension of the

---

[12] It should be noted that Koskinas is not mentioned in Johnson's journal, which, as previously noted, was made contemporaneously as the invention asserted in the patents-at-issue was eventually conceived. (Doc. #69-4). In contrast, Clair is routinely mentioned, and there is a list of phone numbers written in the journal as a means for Johnson to contact Clair. (Doc. #69-4).

17

invention asserted in the patents-at-issue. And it surely is not enough to qualify as a co-inventor. The Court finds Koskinas is not an inventor of the patents-at-issue as a matter of law.

Consequently, summary judgment is granted in Chico's favor to the extent the Court finds Johnson is a co-inventor and Koskinas is not a co-inventor as a matter of law.[13] The remainder of Chico's argument, averring the patents-at-issue are invalid based upon this finding, is denied because Wink has specified it intends to correct the patents-at-issue pursuant to § 256 – a remedy that is available based on the Court's determination that there was no deceptive intent in these inventorship errors.

Accordingly, it is now

**ORDERED:**

1. Plaintiff Chico's Fas, Inc.'s Motion for Reconsideration (Doc. #110) is **GRANTED.**

2. Upon reconsideration, Chico's Fas, Inc.'s Motion for Summary Judgment (Doc. #67) is **GRANTED in part** and **DENIED in part**.

    a. The Court finds the Natori Peony Contour bra anticipates every limitation of every claim of the '347 Patent and every limitation of claims 1-2, 4-9, and 11-20 of the '310 Patent. Consequently, the entirety of the '347 Patent and claims 1-2, 4-9, and 11-20 of the '310 Patent are invalidated.

---

[13] The Court acknowledges this conclusion contradicts its previous Order granting Wink's Motion for Summary Judgment on the inequitable conduct claim – i.e., the Court's language as to who is and who is not an inventor of the patents-at-issue. (Doc. #103 at 4-5). Upon reexamining the separate and distinct inventorship issue, however, the Court cannot deny the extensive evidence, or lack thereof, in the record illustrating Johnson is co-inventor and Koskinas is not a co-inventor as a matter of law. That said, the Court stands by its ultimate decision to grant summary judgment in Wink's favor on the inequitable conduct claim because there is no evidence illustrating any deceptive intent. (Doc. #103 at 5).

     b. The Court finds Beverly Johnson is an inventor and Anastasios Koskinas is not an inventor of the patents-at-issue as a matter of law.

     c. The remainder of the Motion is denied.

**DONE** and **ORDERED** in Fort Myers, Florida, this 29th day of September, 2015.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record