UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CHICO'S FAS, INC., a Florida Corporation,

Plaintiff,

vs.

1654754 ONTARIO, INC. d/b/a WINK            Case No.:  2:13-cv-00792-SPC-DNF
INTIMATES, a Canadian corporation,
ANDREA CLAIR, a Canadian individual, and
ANASTASIOS KOSKINAS, a Canadian individual,

Defendants.                                  Hon. Sheri Polster Chappell
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS, WITH INCORPORATED MEMORANDUM OF LAW**

Defendants, 1654754 ONTARIO, INC. d/b/a WINK INTIMATES, ANDREA CLAIR, and ANASTASIOS KOSKINAS (Defendants are collectively referred to as "Wink"), hereby submit their response in opposition to Plaintiff Chico's FAS, Inc. ("Chico's") Motion to Dismiss (Dkt. #131) for the reasons set forth below:

**I.     Introduction**

On September 29, 2015, the Court granted Plaintiff's Motion for Reconsideration of the Court's Order on Plaintiff's Motion for Summary Judgment (Dkt. #128). In doing so, the Court granted Chico's Summary Judgment Motion, in part and denied it in part. Relevant to this Response, the Court found, among other things, that Ms. Beverly Johnson ("Johnson") is an inventor of U.S. Patent Nos. D622,478, 8,506,347, 8,182,310 (the "Patents-In-Suit"). (Dkt. #128, p. 16.)

Subsequently, Chico's produced an Agreement between Chico's and Johnson to Assign Intellectual Property, which purports to transfer any and all rights Johnson "had, has, or may

1

subsequently acquire in U.S. Patent Nos. D622,478, 8,506,347, 8,182,310…," from Johnson to Chico's (the "Chico's Agreement"). (Dkt. #131 at p. 2). Based on the Chico's Agreement, Chico's filed a Motion to Dismiss (Dkt. #131) as Wink purportedly lacks standing to proceed with its claims of patent infringement.

The Court ordered Wink to file a response to Chico's Motion to Dismiss on or before October 26, 2015 (Dkt. #132). As explained below, and despite this Court's findings, Johnson does not have (and has never had) any rights to or interest in the Patents-In-Suit. Johnson abandoned and/or waived her rights to the Patents-In-Suit, including but not limited to her right to assign any interests she allegedly was awarded by this Court and/or her right to refuse to join suit. Simply put, Johnson has no rights to assign to Chico's and the Chico's Agreement is a legal nullity.

**II.       Johnson's Assignment To Chico's Is Invalid**

      **A.       <u>Johnson Abandoned Any Ownership Rights In The Patents-In-Suit</u>**

On June 15, 2008, Johnson and Wink executed a Non-Disclosure/Non-Compete Agreement (the "Wink Agreement") in which Johnson agreed to the following:

> Not to use the information therein except for evaluating its interest in entering a business relationship with Wink Intimates by Andrea Clair, based on the invention;
>
> **That Beverly Johnson shall not directly or indirectly acquire any interest in, or design, create, manufacture, sell or otherwise deal with any item or product, containing, based upon or derived from the information, except as expressly agreed to in writing by Wink Intimates by Andrea Clair; and**
>
> Wink Intimates by Andrea Clair will be entitled to obtain an injunction to prevent threatened or continued violation of this agreement, but failure to enforce this Agreement shall not be deemed as a waiver of this Agreement.

(Doc. #91-6, emphasis added). Thus, Johnson obligated herself only to deal with Wink and not to acquire an interest in any of Wink's information.

Johnson effectively abandoned any property rights in the Patents-In-Suit. In addition, the obligations under the Wink Agreement are enforceable for an "indefinite period." In breach of her agreement with Wink, Johnson attempted to convey the property rights she had abandoned to the highest bidder (i.e., Chico's) upon learning of the Court's ruling that she was an inventor of the Patents-In-Suit.[1]

In its Motion to Dismiss, Chico's claims that Johnson did not assign her patent rights to Wink because the Wink Agreement does not mention a "right to bring suit." Chico's relies on *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, No. 09−1447 (Fed. Cir. May 14, 2010), which states as follows, in relevant part:

> [I]f a patent owner grants an exclusive license to his patents that transfers "all substantial rights" in the patents to the licensee, then the licensee has sole standing to sue for infringement of the patents. Where an exclusive license transfers less than "all substantial rights" in the patents to the licensee, the licensor remains the owner of the patent and retains the right to sue for infringement.

However, the *Mann* line of cases are inapposite to the current matter. After Johnson executed the waiver, Johnson had no rights to transfer the Patents-in-Suit. Instead, as a consultant to Wink, Johnson whether a co-inventor or not, has an obligation not to acquire an interest in any item "containing, based upon or derived from Wink's information" and not to deal with competitors against Wink.

Chico's other case citations are also irrelevant. No choice of law provision is provided in the Wink Agreement. In determining which state's law applies to contracts, Florida adheres to the rule of *lex loci contractus*. *See State Farm Mutual Automobile Insurance Co. v. Margaret*

---

[1] Wink entered into negotiations with Johnson after the Court's ruling and, contrary to Chico's assertions, this is not relevant to the legal interpretation of the Wink Agreement. Otherwise, and to follow Chico's argument to its logical conclusion, **Chico's attempted purchase of the Patents-In-Suit is an admission that the patents are valid and infringed by Chico's.**

*Roach*, 892 So. 2d 1107, 1112 (Fla. 2d DCA 2004). That rule provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties. *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988). "When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary." *Id*.

B. <u>Canadian Law Applies To The Wink Agreement</u>

The Wink Agreement was executed in Canada. Moreover, both Johnson and Clair are Canadian citizens and Wink Intimates is a Canadian based company. In addition, all of the work performed under the agreement took place in Canada – *that is, the intellectual property, prototypes and production samples were all created in Canada*. As such, Canadian substantive law controls the scope and terms of the Wink Agreement, such as, for example, the determination of whether: 1) Johnson has the authority to transfer any intellectual property ownership rights to Chico's, 2) Johnson has a continuing obligation to assign the intellectual property to Wink, and/or 3) Johnson's inventorship rights automatically transferred to Wink by operation of law.

Chico's failed (or ignored) to address the fact that Canadian law applies to the Wink Agreement. In its Motion to Dismiss, Chico's provided no legal analysis to explain how the Wink Agreement can be supplanted by the Chico's Agreement. As such, Chico's failed to show that Johnson had the authority to assign any patent rights to Chico's or that Chico's currently owns the Patents-In-Suit.

Under Rule 44.1 of the Federal Rules of Civil Procedure, the Court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. Under this rule, expert

testimony accompanied by extracts from foreign legal material is the preferred method by which foreign law is determined. *See, e.g., Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999); and, *Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999).

In order to address issues of Canadian law, Wink submits a legal opinion by a Canadian law firm to assist the Court with an expert analysis on the issues of Canadian law that apply to the Wink Agreement. (See "Canadian Legal Opinion" in ***Exhibit A***). The Canadian Legal Opinion is authored by Mark Biernacki, a Registered Patent Agent, Registered Trademark Agent, Barrister and Solicitor admitted to the Ontario Bar in 1999 and Paul Jorgenson, a Barrister and Solicitor admitted to the Ontario Bar in 2014.

The Canadian Legal Opinion provides guidance with respect to Canadian property rights and contracts that fall under provincial jurisdiction of the law of Ontario. As explained in the Canadian Legal Opinion at pages 2-3:

> A patent is personal property: Bruce Ziff, *Principles of Property Law, 5th ed.* (Toronto: Thomson Reuters, 2010), at pp. 76-77. Although patents are governed by the *Patent Act*, a federal statute, patent ownership is governed by the same provincial laws that govern other personal property: *Techform Products Ltd. v. Wolda* (2001), 15 C.P.R. (4th) 44 (Ont. C.A.).
>
> The law of abandonment of ownership interests in personal property, such as a patent, is not controversial. In *1083994 Ontario Inc. v. Kotsopoulos*, 2012 ONCA 143, at paras. 17- 18, the Court of Appeal for Ontario set out this law:
>
>> Abandonment occurs when there is "<u>a giving up, a total desertion, and absolute relinquishment</u>" of private goods by the former owner. It may arise when the owner with the specific intent of desertion and relinquishment casts away or leaves behind his property...
>>
>> A party who alleges abandonment bears the onus to prove, on a balance of probabilities, that the owner intended to abandon the chattels in issue....

> Abandonment is a question of fact, turning on factors such as the passage of time, the nature of the property, the conduct of the owner and the nature of transaction .... [Citations omitted; emphasis added.]

The following passage from *Sattva Capital Corp. v. Creston Moly Corp.*, 2014 SCC 53, at paras. 47-48, summarizes how an Ontario court would construe a contract:

> [T]he interpretation of contracts has evolved towards a practical, common-sense approach not dominated by technical rules of construction. <u>The overriding concern is to determine "the intent of the parties and the scope of their understanding"</u> .... To do so, a decision-maker must read the contract as a whole, giving the words used their ordinary and grammatical meaning, <u>consistent with the surrounding circumstances known to the parties</u> at the time of formation of the contract....
>
> The meaning of words is often derived from a number of contextual factors, including <u>the purpose of the agreement and the nature of the relationship created</u> by the agreement... [Citations omitted; emphasis added.]

    **C.**    **<u>Johnson Waived Her Rights To Assign Or Refuse To Join Suit Under Canadian Law</u>**

As applied to the Wink Agreement it is clear that Johnson abandoned any property rights in the Patents-In-Suit. Clause 4 of the Wink Agreement renounces acquiring "any interest in ... any item or product" that was based upon confidential information provided by Wink Intimates. Any "item or product" covers intellectual property, including the Patents-In-Suit. The Agreement expressly refers to "intellectual property" and "invention." Accordingly, the parties intended for the Wink Agreement to cover intellectual property rights. It would be inconsistent with that intention to exclude intellectual property from the scope of "any interest in" any item or product. Further, clause 4 provides that Johnson shall not "indirectly acquire" any such interest. The acquisition of ownership rights in the Patents-In-Suit is covered by this phrase.

Clause 4 also renounces any right to "design, create, manufacture, sell or otherwise deal with any item or product" derived from confidential information. A key right that flows from co-

ownership of a patent is that one co-owner (and their assignees) cannot be held liable to another for infringement. In this context, Johnson's willingness to surrender a potentially valuable right to work the protected invention or design further demonstrates abandonment of all right, title and interest.

Further, the Wink Agreement executed by Johnson states a "'Patent Pending' invention named 'Foam Cup, Underwire Bra with Tank Top'" was "invented by Andrea Clair and Anastasios Koskinas/Wink Intimates by Andrea Clair." This statement makes clear that Johnson did not intend to retain any ownership interest in the U.S. Patents.

There is no doubt that Johnson abandoned her entire right, title, and interest in the Patents-In-Suit. Johnson therefore could not assign any valid ownership interest based on, *inter alia*, the well-accepted principle of property law: *nemo dat quod non habet* ("one cannot give that which one does not have"). Thus, the purported assignment of rights to Chico's is invalid and/or a legal nullity.

Chico's cites to *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), in arguing that all co-owners must consent to join as plaintiffs in a patent infringement suit. However, Chico's fails to recognize that one of the established exceptions is present in this case:[2]

> First, when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee and must permit the licensee to sue in his name. See *Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469, 46 S.Ct. 166, 169-70, 70 L.Ed. 357 (1926). Second, the obligation may arise by contract among co-owners. ***If, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers.*** See *Willingham v. Lawton*, 555 F.2d 1340, 1344-45, 194 USPQ 249, 252 (6th Cir.1977).

As explained herein, Johnson waived any right to an ownership interest in the Patents-In-Suit. It follows that she has waived the right to consent to, or refuse to join a suit. An exception

---

[2] *Id*. at FN. 9 (emphasis added).

to the rule occurs when a co-owner of a patent has contractually waived her right to consent.[3] Moreover, Johnson also waived any right to voluntarily participate in a patent infringement suit as the Court may require under Federal Rule of Procedure 19(a). As such, Wink reserves the right to request that the Court join Johnson as a party to the extent deemed necessary.

**III.   Chico's Has Failed to Meet Its Burden of Proof of Lack of Standing**

On a motion to dismiss for lack of standing, the Court accepts as true all material allegations pertaining to standing and construes them in favor of the party claiming that it has standing. *See Ouellette v. Mills*, 22 F. Supp. 3d 36, 40 (D. Me. 2014). As fully detailed above, and in this case, Chico's has failed to meet its burden of proof to show that Johnson retained any rights to the Patents-In-Suit under Canadian Law; and, as such, this Court should therefore flatly deny Chico's Motion to Dismiss Defendants' Claims with Prejudice.

**IV.   Conclusion**

For the reasons set forth above, Chico's Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Kevin J. McNeely
Kevin J. McNeely (kevin@miplaw.com)
Steven M. War (steve@miplaw.com)
Christopher C. Casieri (chris@miplaw.com)
MCNEELY, HARE & WAR, LLP
5335 Wisconsin Ave, NW,
Suite 440
Washington, DC 20015
Telephone: (202) 536-5789
Facsimile: (202) 478-1813
kevin@miplaw.com

And,

---

[3] *Willingham v. Lawton*, 555 F. 2d 1340 (Court of Appeals, 6th Circuit 1977).

/s/ Shyamie Dixit
DIXIT LAW FIRM, P.A.
Shyamie Dixit, Esq. (sdixit@dixitlaw.com)
Florida Bar No.: 719684
3030 N. Rocky Point Drive West, Suite 260
Tampa, FL 33607
Telephone: (813) 252-3999
Facsimile: (813) 252-3997
Attorneys for Defendants 1654754
ONTARIO, INC. d/b/a WINK
INTIMATES, ANDREA CLAIR AND
ANASTASIOS KOSKINAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the October 26, 2015, I will file the foregoing with the Clerk of the Court by utilizing the Court's CM/ECF system which will send a Notice of Electronic Filing to each attorney of record in the above matter.

/s/ Shyamie Dixit
Shyamie Dixit, Esq. (sdixit@dixitlaw.com)
Florida Bar No.: 719684