**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

CHICO'S FAS, INC., a Florida corporation,

        Plaintiff/Counter-Defendant,

vs.

1654754 ONTARIO, INC. d/b/a WINK
INTIMATES, a Canadian corporation,
ANDREA CLAIR, a Canadian individual,
and ANASTASIOS KOSKINAS,
a Canadian individual,

        Defendants/Counter-Plaintiffs.

**Case No. 2:13-cv-00792-FtM-38MRM**

## OPPOSITION TO DEFENDANTS' OBJECTIONS TO PLAINTIFF'S RENEWED BILL OF COSTS (DKT. 163)

Plaintiff Chico's FAS, Inc. ("Chico's") files this response in opposition to Defendants' Objections (Doc. 163) to Chico's Renewed Bill of Costs (Doc. 158), and in opposition shows this Court as follows:

**I.      CHICO'S IS THE PREVAILING PARTY**

The argument that the result in this action (and the appeal) is anything less than a complete victory for Chico's is not credible. Defendants argue that Chico's "bought" its way out of litigation. This is incorrect. Chico's established, via its motion for summary judgment, that 18 claims of the '310 Patent and the entirety of the '347 Patent were invalid, as requested in the declaratory judgment of invalidity. (Doc. 128.) In the same Order on summary judgment in Chico's favor, this Court found Defendants failed to name Beverly Johnson as an inventor and improperly named Anastasios Koskinas as an inventor . (Doc. 128, pp. 16-17.) These findings effectively ended this case. To pursue a

claim of infringement, all owners (*i.e.*, proper inventors) must participate in the suit. (Dkt. #138, p. 3.) Chico's also sought to prevent a subsequent lawsuit from being filed by acquiring Johnson's rights. Only after this Court's Order on inventorship was this possible, as Chico's was then able to acquire Ms. Johnson's newly-recognized rights. Defendants certainly recognized this, as they contacted Johnson and offered to pay her for the same after the Court's findings on inventorship. (Doc. 131-2.)

Defendants argue that had Chico's not acquired the rights from Johnson, Defendants instead would have purchased these rights.[1] Of course, this is nothing more than wild speculation and ignores Johnson's refusal to sell her rights to Defendants. The undisputed fact is that Johnson was especially hostile to Defendants. Defendants had stolen her design services, refused to pay her and skipped payment on a check. (Dkt. #67, p. 21.) Johnson even went so far as to pursue criminal charges against Defendants. (Johnson Deposition p. 188.) Johnson was "very angry" with Ms. Clair (*id*. at 189.) As a Canadian citizen, Johnson could not to be required to participate in this dispute, whether by the parties or by the Court. With the finding that Johnson was properly an inventor, based on Chico's motion for summary judgment, the dispute was necessarily resolved in favor of Chico's, as Defendants could no longer pursue claims of infringement against Chico's. Moreover, many of the asserted claims were also deemed invalid, limiting (but not eliminating) Defendants' ability to pursue Chico's in a subsequent action on the

---

[1] It is odd Defendants previously argued that Johnson had no ability to sell her rights by virtue of a non-disclosure agreement, but now claim that were it not for Chico's acquisition, Defendants would have obtained Johnson's rights (that Defendants refused to acknowledge even after acquired by Chico's).

asserted patents. Chico's simply took the prudent next step of forever eliminating any <u>future</u> claims of Defendants by obtaining Johnson's rights.

As explained by Chico's in its motion for fees, a "prevailing party" is one that has achieved at least some relief on the merits of the litigation "which alters the legal relationship of the parties." *Inland Steel Co. v. LTV Steel Company*, 364 F.3d 1318, 1320 (Fed. Cir. 2004). A party is considered to have prevailed if it achieves success on a significant issue in the litigation resulting in at least some of the benefits sought in bringing the suit, including avoiding monetary liability. *Shum v. Intel Corp.,* 629 F.3d 1360, 1366 (Fed. Cir. 2010). A prevailing party need not prevail on all of its claims or defenses. For example*,* in *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378*,* 1381 (Fed. Cir. 2005), the accused infringer was found to have prevailed when it achieved a judgment of non-infringement, despite the fact the patent was held to be valid; *see also, Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 85 (D.D.C. 2015) (noting, in *dicta*, that prevailing on assignment based claims and correction of inventorship claims could be highly prejudicial to the financial interests of the co-owners); *Normexsteel, Inc. v. Flynn*, 2006 U.S. Dist. LEXIS 85547, *6-7 (S.D. Cal. Nov. 22, 2006) (holding that defendant *prevailed* because "Plaintiffs' dismissal under the present factual context operates, in a very practical sense, as a dismissal with prejudice. Given the Court's conclusion that Plaintiffs Hunter and Payne were not bona fide litigants because they were not the true owners of the disputed NorMex securities, it appears these particular Plaintiffs could never again bring suit against Defendant under the same facts"). A prevailing party does not even have to prevail in the litigation. In *Inland Steel*, the accused infringer instituted a re-examination of the patents in suit that effectively stayed

the litigation. 364 F.3d at 1320. When the Patent Office cancelled the patent during reexamination, the District Court dismissed the case with prejudice. The Federal Circuit found that, by obtaining a dismissal with prejudice, the accused infringer was the prevailing party for the purpose of Section 285. *Inland Steel*, at 1381. An accused infringer may also be found to prevail when the patentee voluntarily dismisses a patent infringement complaint. *Highway Equip. Co. v. FECO, Ltd.*, 2005 U.S. Dist. LEXIS 17313 (N.D. Iowa April 22, 2005); *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, 2005 U.S. Dist. LEXIS 39332 (N.D. Cal. Nov. 18, 2005).

Here, Defendants asserted that unless and until Chico's paid a significant amount of money to Defendants[2], Chico's could not offer the accused products for sale. Defendants seem to ignore the facts and rulings of this Court, as Defendants argue somehow they are the prevailing party. Contrary to Defendants illogical declaration, as a result of the Court's rulings, Defendants' legal position has forever changed, and Chico's is entitled to offer its cami-bra without threats from Defendants, payments to Defendants, or concern of threats to its customers. The subsequent acquisition of Ms. Johnson's rights resolved any future claims against Chico's under those claims that remain after summary judgment on invalidity. Undoubtedly, Chico's has received relief that materially alters the legal relationship between the parties forever as a result of this litigation (including a successful appeal), and that result unequivocally favored Chico's.

---

[2] Defendants' expert offered an opinion that Defendants suffered millions of dollars in damages.

## II.     SPECIFIC COSTS CHALLENGED BY DEFENDANTS

### A.     Fees of the Clerk

Defendants concede that a prevailing party is entitled to filing fees (Doc. 146, p. 5), yet argue (without any legal authority) that the Court should nonetheless deny this cost. Having acknowledged that the filing fee should be awarded to the prevailing party, Defendants' objection should be denied. Defendants should be taxed $400 for filing fees.

### B.     Fees for Summons and Subpoenas

Chico's served subpoenas on various third parties in pursuit of prior art and supporting documentation related thereto. Defendants' argument seems to be that because the Natori prior art proved fatal to many of the asserted claims (a position contended by Defendants without evidence), Chico's should have stopped searching for evidence of invalidity. Such a theory is short-sighted, nonsensical and unsupported. Chico's was entitled to pursue all relevant prior art.

The Eleventh Circuit has held that fees under 28 U.S.C. §1920 can be reimbursed for private process servers. *United States EEOC v. W&O Inc*., 213 F.3d 600, 624 (11th Cir. Fla. 2000). The Marshals Service charges $55/hour and travel costs and other expenses. Chico's acknowledges the documents available may not have sufficient documents to establish mileage and time required to serve. Therefore, if the Court were so inclined, limiting service costs at $55/subpoena would not be unreasonable.

### C.     Fees for Transcripts

Defendants oppose costs associated with every deposition conducted in this case, including those noticed by Defendants (who presumably viewed them as necessarily obtained for use in the case at the time). "The burden is on the party opposing taxation to

demonstrate that the depositions were 'not related to an issue which was present in the case at the time the deposition was taken.'" *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 650 (S.D. Fla. 2007), quoting (in part) *W&O Inc.*, 213 F.3d at 621. "While not dispositive, the deposition of a witness appearing on the losing party's witness list is generally reasonable…" *Wash Depot Holdings*, 242 F.R.D. at 650.

Both parties listed Emily Suess, Cindy Tiranayake, David May, Donna Mines, Andrea Clair and Anastasios Koskinas as witnesses for trial[3]. (Doc. 112.) Certainly each of these witnesses was necessarily obtained for use in the case. Additionally, Ms. Johnson's deposition was undoubtedly necessary for use in this case to establish inventorship. Indeed, the depositions of Clair (both individually and as the corporate representative of Wink), Koskinas and Johnson were all relied on heavily relied on by the parties and the Court in addressing the issue of inventorship. Chico's also submitted excerpts of video depositions with its summary judgment motion. (Doc. 65.) Similarly, the depositions of all four experts (Lewis, Baran, Yngvesdotter and Falconer) were used by the parties in their respective Daubert motions. The experts themselves also relied on depositions of corporate representatives of the parties and/or discussions with these representatives in their expert reports. Finally, Chico's seeks an appearance fee for the deposition of Ben Clark ($150), a corporate representative of OSP Group for purposes of production of prior art documents and authentication of said documents.

Defendants seem to take issue with certain itemized costs, such as copying fees for deposition exhibits, video transcript and appearance fees. Each of these is properly

---

[3] Ms. Suess, Ms. Tiranayake and Mr. May were each designated as corporate representatives of Chico's.

recoverable. Certainly duplication of the official exhibits, often authenticated in deposition, are properly taxed as part of the transcript costs (as well as under Section 4 of Section 1920 for copies of necessary materials). Several decisions in the Eleventh Circuit have recognized that costs associated with deposition exhibits are taxable. *Frasca v. NCL (Bahamas) Ltd*., 2014 U.S. Dist. LEXIS 117859, *18 (S.D. Fla. Aug. 25, 2014); *Tampa Bay Water v. HDR Eng'g, Inc*., 2012 U.S. Dist. LEXIS 157631, *56 (M.D. Fla. Nov. 2, 2012). Several of these exhibits were submitted during briefing of the motions for summary judgment. They are properly taxed under §1920.

The Eleventh Circuit has held that ". . . when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed." *Morrison v. Reichhold Chems., Inc*., 97 F.3d 460, 465 (11th Cir. 1996). In this case there can be no dispute that each deposition where video was used, it was noticed for video without objection. The only videos ordered (and for which costs are sought) were submitted to this Court for use in resolving the issue of inventorship, a central issue to this case. There can be no doubt these videos were obtained for use (and actually used) in this case, making them properly taxable.

Courts have also repeatedly found that a court reporter's appearance fee is properly taxed as part of the cost of a deposition transcript. *See Cadle v. GEICO Gen. Ins. Co*., 2015 U.S. Dist. LEXIS 91250, *13-14 (M.D. Fla. June 26, 2015); *Blanco v. Biscayne Wine Group, LLC*, 2014 U.S. Dist. LEXIS 81768. *9-10 (S.D. Fla. June 13,

2014); *Joseph v. Nichell's Caribbean Cuisine, Inc*., 950 F. Supp. 2d 1254, 1260 (S.D. Fla. 2013). This makes sense; an unavoidable cost of the transcript of depositions is having a court reporter *appear* at the deposition. As such, courts routinely allow such costs.

In several instances, the court reporter provided the original and a *courtesy* copy to Chico's. As can be seen from the invoices, this is a single line item (not separate charges for copies of a transcript ordered by Chico's) with a charge solely for the <u>original copy</u>. For example, Doc. 141-4, p. 5 shows the charge for the transcript of Mr. Koskinas, and only a single copy is charged (the transcript was 94 pages with a per page charge for the original and no charge for the copy). Thus, contrary to Defendants' contentions, the Court should not simply halve the itemized charge when no cost is sought for a copy (as the copy was free of charge).

Defendants also argue expedited transcript fees are not taxable. While it is true that such fees are not taxable when for it is for the convenience of counsel, courts have recognized that such fees can be taxed where there was a legitimate need for quick transcription. *Frasca v. NCL (Bahamas) Ltd*., 2014 U.S. Dist. LEXIS 117859, *16 (S.D. Fla. Aug. 25, 2014). For example, Chico's ordered the rough draft of one day (January 6, 2015) of Ms. Clair's deposition specifically for use in preparing the motion to amend the complaint. Time was of the essence in seeking leave to amend, and Chico's filed its motion (and proposed complaint) immediately after Ms. Clair's deposition. (Doc. 55.) Had Chico's waited for a standard delivery transcript to confirm Ms. Clair's admissions, it would have delayed seeking leave to amend by at least a week. Chico's seeks taxing costs for the expedited delivery of Mr. Falconer's first deposition, which occurred less than two weeks before the Daubert deadline; a motion that was granted in part. Chico's

also seeks the costs for expedited transcription of Mr. Falconer's second deposition, as it occurred the week before a renewed Daubert motion was due pursuant to this Court's Order (Doc. 102) setting deadlines for both Falconer's deposition and Chico's renewed challenge. None of these expedited transcripts were for convenience of counsel or the parties, but instead necessitated by circumstances and deadlines in the case. As such, they are properly taxable.

Based on the foregoing, the Court should reject Defendants' objections and award Chico's costs of $13,219.63.

### D.    Fees for Printing

Chico's seeks costs for printing documents to be produced in the litigation. These fees were not internal fees but third party vendors that prepared documents to be produced pursuant to Rule 26.

Of the $2694.60 sought, $1380 relates to costs associated with the preparation of video deposition testimony submitted for the Court in support of Chico's motion for summary judgment. Rather than submitting complete video transcripts, Chico's had excerpts prepared to ease the burden on the Court of searching for relevant portions of the testimony. These are properly taxed, whether in the category of transcription or exemplification, as there is no question these videos were for use in the case and were specifically submitted for use in summary judgment. Accordingly these costs are properly taxable.

### E.    Fees for Exemplification

Chico's seeks costs for certified file histories. Defendants do not object to these costs. $1,007.25 should be taxed against Defendants for exemplification.

**F.      Other Costs**

Defendants do not dispute that attorney's out of pocket travel expenses can be taxed if reasonable (Doc. 146, p. 15), but object to a variety of travel expenses, arguing they are not supported or undated. This is incorrect. Submitted to the Court were trip reports (with dates) that break out airfare, meals and lodging. Following these reports are the actual dated and itemized receipts substantiating each of the reported expenses listed on the expense reports. It is unclear what further documentation could be provided; these costs are properly taxable.

Chico's also sought the cost of running a search to identify the legal name of Wink, a Canadian entity ($167.76). This search was necessarily done to file this action and should be taxed as a legitimate out of pocket expense. However, there is case law suggesting costs for legal research are not recoverable under §1920 (though they can be recoverable as fees). *See Gary Brown & Assocs. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 846 (11th Cir. Fla. 2008). There is also some authority for the proposition that express mail costs are not taxable. Therefore, if the Court chooses to deduct these costs, Chico's request for costs of $6244.17 should be reduced to $5,112.45.

**III.     CONCLUSION**

Based on the foregoing, the Court should reject Defendants objections and tax costs of $23,038.93 (which accounts for deductions of $3,109.72 described above if the Court so chooses).

Respectfully submitted April 13, 2017.

/s/Ryan T. Santurri
Ava K. Doppelt, FL Bar #393738
adoppelt@addmg.com
Brian R. Gilchrist, FL Bar #774065
bgilchrist@addmg.com
Ryan T. Santurri, FL Bar #15698
rsanturri@addmg.com
Allison R. Imber, FL Bar #44233
aimber@addmg.com
ALLEN, DYER, DOPPELT
& GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

*Counsel for Plaintiff Chico's FAS, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2017, I electronically filed the following using the Management/Electronic Case Filing ("CM/ECF") system which will send a Notice of Electronic Filing to the following CM/ECF participants:

Shyamie Dixit, Esq.
sdixit@dixitlaw.com
Robert L. Vessel, Esq.
rvessel@dixitlaw.com
Dixit Law Firm, P.A.
3030 N. Rocky Point Drive West
Suite 260
Tampa, FL 33607
Telephone: (813) 252-3999
Facsimile: (813) 252-3997

*Counsel for Defendants*

                                        */s/Ryan T. Santurri*
                                        Ryan T. Santurri, FL Bar #015698