UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHICO'S FAS, INC., a Florida corporation,

     Plaintiff,

v.                              Case No: 2:13-cv-792-FtM-38MRM

ANDREA CLAIR, ANASTASIOS
KOSKINAS and 1654754 ONTARIO, INC.,

     Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

     Pending before the Court is Plaintiff Chico's FAS, Inc.'s ("Chico's") Renewed Motion and Memorandum to Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees (Doc. 157), filed on March 23, 2017. Defendants 1654754 Ontario, Inc., Andrea Clair, and Anastasios Koskinas (collectively hereinafter referred to as "Wink") filed an Opposition (Doc. 164) to Plaintiff's Renewed Motion on April 6, 2017.

     Additionally before the Court are Plaintiff's Renewed Bill of Costs (Doc. 158) filed on March 23, 2017; Defendants' Objections to Plaintiff's *Renewed* Bill of Costs (Doc. 163) filed on April 6, 2017; and Plaintiff's Opposition to Defendants' Objections to Plaintiff's Renewed Bill of Costs (Doc. 165) filed on April 13, 2017.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

These matters were referred to the Undersigned and are now ripe for review.  For the reasons explained herein, the Undersigned respectfully recommends that Plaintiff's Renewed Motion and Memorandum to Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees (Doc. 157) be **DENIED** but that costs be taxed against Defendants in the amount of $16,297.75.

## I.      Background

This is a patent infringement action.  (Doc. 138 at 1).  Wink is a manufacturer and retailer of women's intimate apparel and is owned by Andrea Clair and Anastasios Koskinas.  (*Id.*). Clair and Koskinas founded Wink after securing a design patent (United States Design Patent No. D622,478) for a combination brassiere and tank top.  (*Id.* at 1-2).  Later, Clair and Koskinas secured two additional utility patents (United States Patent Nos. 8,506,347 and 8,182,310) covering the same design.  (*Id.* at 2).  These three patents were eventually assigned to Wink. (*Id.*).  From the patented design, Wink created the 9to5 Cami Bra – "the original cami bra." (*Id.*).

Chico's specializes in women's apparel, selling intimate apparel through its Soma brand. (*Id.*).  In 2013, Chico's received a letter from Wink alleging that its Soma brand Oh My Gorgeous Cami Bra infringed on Wink's cami bra patents.  (*Id.*).  In response, Chico's initiated this declaratory judgment action, asserting three counts:  declaratory judgment of non-infringement of the patents-at-issue (Count I); declaratory judgment of invalidity of the patents-at-issue (Count II); and declaratory judgment of unenforceability of the patents-at-issue (Count III).  (Doc. 61).  Wink countersued Chico's, asserting three counterclaims:  Infringement of U.S. Patent No. 8,506,347 (Counterclaim I); Infringement of U.S. Patent No. 8,182,310 (Counterclaim II); and Infringement of U.S. Patent No. D622,478 (Counterclaim III).  (Doc. 63).

After extensive litigation, the Court ultimately addressed motions for summary judgment filed by both sides.  The Court found that each party was entitled to summary judgment in part.  (Doc. 128 at 18-19; Doc. 129 at 5).  In Wink's favor, the Court found that Chico's failed to produce any evidence illustrating the patents-at-issue were unenforceable on the basis of inequitable conduct by Defendants.  (Doc. 129 at 5).  In Chico's favor, the Court found that (1) prior art invalidated a majority of the claims set forth in the utility patents and (2) a third-party, Beverly Johnson, was an inventor of the patents-at-issue rather than Koskinas.  (Doc. 128 at 18-19).

After these rulings, the parties "raced" to find Ms. Johnson and secure whatever rights she had in the patents-at-issue.  (Doc. 138 at 2).  In the end, Chico's "won" the race and obtained Johnson's past, present, and future rights in the patents-at-issue.  (*Id.*).  After it secured the rights, Chico's then moved to dismiss Wink's infringement counterclaims on the basis that a co-owner of a patent cannot sue another co-owner for infringement.  (*Id.*).  The Court agreed and dismissed Wink's Counterclaims for Patent Infringement (Doc. 63).  (*Id.* at 9).

Having dismissed Wink's counterclaims, the Court instructed Chico's to specify how it wished to proceed with its remaining claims for non-infringement and invalidity.  (*Id.*).  Chico's responded that the remaining claims should be dismissed because there was no longer a live case or controversy.  (Doc. 139).  The Court agreed, dismissing Chico's remaining claims for non-infringement and invalidity (Doc. 61).  (Doc. 140 at 2).

As part of the Order dismissing Chico's claims for non-infringement and invalidity, the Court specifically instructed Chico's to file any motion seeking attorneys' fees or costs no later than December 31, 2015.  (*Id.*).  Plaintiff timely filed a Motion for Attorneys' Fees.  (Doc. 142).  After this time, however, both parties filed appeals with the United States Court of Appeals for

the Federal Circuit.  (Docs. 143, 147).  In light of the cross-appeals, the Court denied Chico's

Motion for Attorneys' Fees (Doc. 142) without prejudice as to Plaintiff's ability to renew its

motion for attorneys' fees no later than fourteen (14) days after entry of a Mandate by the

Federal Circuit on the parties' respective appeals.  (Doc. 150 at 2).

A Mandate from the Federal Circuit, dated March 20, 2017, was entered in this Court

remanding this case to correct inventorship pursuant to 35 U.S.C. § 256.  (See Doc. 161; see also

Doc. 162 at 1).[2]  Plaintiff then timely filed the present Renewed Motion and Memorandum to

Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees (Doc. 157).  In

addition, Plaintiff filed its Renewed Bill of Costs (Doc. 158).

At present, the parties disagree whether attorneys' fees and costs should be awarded in

this action.  The Undersigned addresses these issues, beginning with Plaintiff's Renewed Motion

and Memorandum to Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees

(Doc. 157).

## II.    Plaintiff's Renewed Motion and Memorandum to Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees (Doc. 157)

Section 285 of the Patent Act provides that, "[t]he court in exceptional cases may award

reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Under this statute, the Court

must address three separate issues.  As an initial matter, the Court must evaluate which party is

the prevailing party.  See id.  Second, the Court must determine whether the action is

"exceptional."  See id.  Finally, if this action is "exceptional," then the Court must evaluate

---

[2]  Although not pertinent to the present dispute, based on the Mandate, the parties filed a
stipulation requesting that the Court issue an order (1) finding that inventorship listed on U.S.
Patent Nos. D622,478; 8,506,347; and 8,182,310 must be corrected under § 256 and (2) directing
the United States Patent and Trade Office to make the correction.  (See Doc. 159).  The Court
then entered an Order adding Beverly Johnson of Hamilton, ON, Canada as an inventor to the
patents-at-issue and removing Anastasios Koskinas as an inventor.  (Doc. 162 at 2).

whether the attorneys' fees sought by the prevailing party are reasonable.  *See id.*

Unsurprisingly, the parties contest these issues.

      **A.**     **Prevailing Party**

     First, the Court must determine which party is the prevailing party in this action.  *See id.*

In patent litigation, Federal Circuit law governs the determination of which party is the

"prevailing party."  *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014);

*see also Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010) (citing *Manildra Milling*

*Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996)).  To be the prevailing party, the

Court must find:  "(1) that the party received at least some relief on the merits, and (2) [t]hat

relief must materially alter the legal relationship between the parties by modifying one party's

behavior in a way that directly benefits the opposing party."  *Id.* (alterations in original; internal

quotation omitted; quoting *Shum*, 629 F.3d at 1366).  Moreover, a party need not prevail on all of

the claims to be considered the prevailing party.  *Id.* (citations omitted).  Nonetheless, finding

one party to be the prevailing party does not automatically entitle it to any particular level of fees

or costs.  *SSL Servs.*, 769 F.3d at 1087 (citing *Shum*, 629 F.3d at 1366).

     In the present action, the question of which party prevailed is complicated because the

Court granted summary judgment in part to Plaintiff and in part to Defendants.  For its part,

Plaintiff argues that it is a prevailing party because "[t]he underlying goal of Section 285 is to

make a prevailing party whole."  (Doc. 157 at 6 (citing *Yamanouchi Pharm. Co. v. Danbury*

*Pharmacal, Inc.*, 21 F. Supp. 2d 366 (S.D.N.Y. 1998), *aff'd sub nom. Yamanouchi Pharm. Co. v.*

*Danbury Pharmacal, Inc.*, 231 F.3d 1339 (Fed. Cir. 2000))).  Plaintiff contends that the purpose

of Section 285 is "to compensate the prevailing party for its monetary outlays in the prosecution

or defense of the suit."  (*Id.* at 6-7 (quoting *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d

1573, 1578 (Fed. Cir. 1983))).  As a result, Plaintiff argues that it must be considered the prevailing party because it received the relief it sought at the outset of the litigation, which has materially altered the legal relationship between the parties.  (*Id.* at 7).

Specifically, Plaintiff points out that Defendants demanded money from Chico's and contended that, in the absence of a payment to Defendants, "Chico's could not offer the accused products."  (*Id.*).  Plaintiff argues that, in response, it brought the current action, which action has freed it from Defendants' demands for money based on Chico's sale of cami-bras.  (*Id.*).  Plaintiff argues that, due to the Court's rulings and Chico's subsequent purchase of ownership interest in the patents-at-issue from Ms. Johnson, "the parties' legal positions have forever materially changed to Chico's benefit" because "Chico's is free to offer its cami-bra without threats from Defendants, payments to Defendants, or concern of threats by Defendants to Chico's customers."  (*Id.*).

In response, Defendants make no argument that they prevailed in the litigation but, instead, contend that no party prevailed in this litigation.  (*See* Doc. 164 at 5-9).[3]  Specifically, Defendants assert that Chico's is not the prevailing party because it did not prevail on any of the claims it asserted in the Third Amended Complaint (Doc. 61).  (*Id.* at 6).  To the contrary, Defendants contend that all of Plaintiff's claims were ultimately dismissed by the Court.  (*Id.*).  Similarly, Defendants argue that, instead of having the Court fully resolve the case on the merits, Plaintiff bought its way out of the current litigation via its purchase of Ms. Johnson's rights.  (*See id.* at 5).  Defendants contend that Plaintiff has provided no authority that it should be found to be the prevailing party in light of this purchase.  (*Id.* at 5-9).

---

[3]  Defendants similarly argue in their Objection to Plaintiff's Renewed Bill of Costs that neither party prevailed in this litigation.  (Doc. 163 at 1).

In this case, although the decision as to which party prevailed is somewhat complicated by the parties' mixed results, the Federal Circuit has expressly indicated that there is no special rule or exception for mixed judgment cases, where both parties have some claims decided in their favor. *Shum*, 629 F.3d at 1367.[4]  In fact, even in mixed judgment cases, the Federal Circuit has indicated that "punting is not an option" and that "[f]or the purposes of costs and fees, there can be only one winner" and the Court "must choose one, and only one, 'prevailing party' to receive any costs award." *Id.*  In light of this precedent, Defendants' argument that neither side was the prevailing party for purposes of 35 U.S.C. § 285 must be rejected.  *See Shum*, 629 F.3d at 1367; *Highway Equipment*, 469 F.3d at 1035.  Instead, this Court must choose a prevailing party.  *See Shum*, 629 F.3d at 1367.  Upon review of the parties' arguments, although both sides prevailed in part in this action, the Undersigned recommends that Plaintiff be found the prevailing party in this litigation.

In coming to this conclusion, the Undersigned finds persuasive Plaintiff's argument that it received relief that it sought by bringing this action.  (*See* Doc. 157 at 7).  Based on how the litigation unfolded, Chico's now can, in fact, offer its accused products without fear of any demands by Defendants.  Moreover, it is clear that Plaintiff was only able to achieve these goals because it prevailed, in part, on the merits through (1) rulings that many of the claims of the two utility patents-at-issue were invalid and (2) its successful arguments regarding improper inventorship.  (*See* Doc. 128 at 18).  These victories, coupled with Chico's subsequent purchase of Ms. Johnson's ownership interest in the patents-at-issue, effectively ended the litigation

---

[4]  The Court in *Shum* only addressed the standard for determining the prevailing party under Fed. R. Civ. P. 54(d).  *Shum*, 629 F.3d at 1366-68.  Nonetheless, under Federal Circuit precedent, the prevailing party under Fed. R. Civ. P 54 and 35 U.S.C. § 285 are treated similarly.  *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).

favorably to Plaintiff.  (*See* Doc. 138; Doc. 140).  Moreover, although the purchase of Ms. Johnson's rights occurred outside of this litigation, this action was only meaningful due to Plaintiff's victory regarding inventorship.  Stated differently, had Plaintiff not prevailed on its inventorship arguments, then its purchase of rights would not have ended the litigation favorably to Plaintiff as it ultimately did.  Thus, while Plaintiff did not achieve total victory, its victories on the merits materially altered the legal relationship between the parties by modifying Defendant's behavior in a way that directly benefits the Plaintiff.  *See Shum*, 629 F.3d at 1368.

In contrast, Defendants' victory in obtaining summary judgment on Chico's inequitable conduct claim did not materially alter the parties' behavior.  (*See* Doc. 129).  Indeed, even though Defendants won on that ground, the litigation did not end, and Plaintiff continued to maintain other theories seeking the same relief, *i.e.*, to prohibit Defendants from making further claims against Chico's for patent infringement.  (*See* Doc. 61).  Given that the Court must choose only one winner to be the prevailing party, the Undersigned must conclude that Plaintiff is the prevailing party for purposes of 35 U.S.C. § 285.  Thus, the Undersigned recommends that Plaintiff be found the prevailing party.

**B.    Exceptional Case**

The Undersigned next addresses whether the present case is "exceptional" pursuant to 35 U.S.C. § 285.

On this point, prior to 2014, a case was "exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (citations omitted), *abrogated*

by, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).  The sanction of awarding fees and costs to the prevailing party in a patent case could only be imposed on the patentee if both the litigation was brought in bad faith and the litigation was obviously baseless.  *Id.*

In 2014, the Supreme Court found that this formulation was overly rigid.  *See Octane Fitness*, 134 S. Ct. at 1756.  The Supreme Court held that an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.*  This determination must be made on a case-by-case basis, considering the totality of the circumstances, at the discretion of the district court.  *Id.*  As in cases under the Copyright Act, there is no precise formula or rule to make these determinations.  *Id.*  The Supreme Court suggested that district courts "could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.* (citations omitted).  This determination is made using a preponderance of the evidence standard.  *Id.* at 1758.  Moreover, the Supreme Court has concluded that the district court is in a better position to decide whether a case is "exceptional" "because it lives with the case over a prolonged period of time."  *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014).  Accordingly, the standard of review for the determination of whether a patent case is "exceptional" is reviewed only for abuse of discretion.  *Id.*

Here, Plaintiff articulates two theories as to why this case should case should be found exceptional.  First, Plaintiff argues that inventorship was never meaningfully disputed.  (Doc.

157 at 7-10).  Second, Plaintiff argues that there is no dispute that the prior art rendered the claims of the utility patents invalid.  (*Id.* at 10-12).  Upon review, however, the Undersigned cannot conclude that either of these arguments make this case stand out from others with respect to the substantive strength of either party's litigating position or that the case was litigated in an unreasonable manner.  *See Octane Fitness*, 134 S. Ct. at 1756.

As to Plaintiff's first argument, the Undersigned is not persuaded that inventorship was never meaningfully disputed such that the present case is "exceptional."  To the contrary, there is ample evidence of record showing that inventorship was in question throughout the course of the litigation.  For instance, this Court previously found, on the issue of inequitable conduct related to inventorship, that the record illustrated that "(1) Clair never considered Johnson to be an inventor (Doc. #66-5 at 6, ¶ 29-30); (2) Johnson never considered herself to be an inventor (Doc. #66-2 at 171:10-13); and (3) Johnson never considered the invention that she conceived with Clair to be patentable (Doc. #66-2 at 171:1-4)."  (Doc. 129 at 4).  Although Plaintiff argues that a lack of fraudulent intent is not a legal defense to improper inventorship claims, the issue of inventorship was ultimately resolved by the Court only after the parties completed extensive discovery and detailed briefing.  (*See* Doc. 128).  Given these facts, the Undersigned cannot conclude that this case stands out from others with respect to the substantive strength of either party's litigating position.  *See Octane Fitness*, 134 S. Ct. at 1756.  Indeed, although Plaintiff ultimately had the better argument, the Undersigned has no basis to conclude that Plaintiff's position was so superior – legally or factually – such that this case can be deemed exceptional as a result.  Furthermore, the Undersigned cannot conclude that the case has been litigated in an unreasonable manner related to inventorship.  *See id.*  In fact, this Court has never expressly found that any of Defendants' arguments on inventorship were meritless or frivolous.  Thus,

viewing this case as a whole, Plaintiff's first argument as to why this case is exceptional is not persuasive.

As to Plaintiff's second argument – that there was no dispute that the prior art rendered the claims of the utility patents invalid – the Undersigned is again not persuaded because this argument ignores the progress of this case.  For instance, the Undersigned notes that, although the Court ruled in Plaintiff's favor as to the prior art in the end, (*see* Doc. 128), Defendants had actually prevailed in defeating summary judgment relating to the prior art at an earlier point in the case.  (*See* Doc. 107).  Although the Court ultimately reconsidered its June 15, 2015 Order and came to a different conclusion, (*see* Doc. 128), the fact of this procedural history tends to show that the substantive strength of either party's litigating position was not entirely superior throughout the case.  Furthermore, this Court has never called Defendants' arguments related to the prior art meritless or frivolous.  Instead, at most, the Court only characterized Defendants' arguments as unpersuasive.  (*See* Doc. 128 at 9).  Moreover, simply prevailing does not equate to a finding that the case was litigated in an unreasonable manner, and the record does not support a finding that Defendants proceeded in frivolous manner or that their actions in defending this case were objectively unreasonable.  *See Octane Fitness*, 134 S. Ct. at 1758.  Thus, the Undersigned cannot conclude that this case is exceptional on this basis.

As a final matter, evaluating this case based on the totality of the circumstances, the Undersigned notes that, after the Court ruled on the parties' summary judgment motions, many issues remained in dispute.  In fact, claims in both Chico's Third Amended Complaint (Doc. 61) and Defendants' Counterclaims for Infringement (Doc. 63) survived summary judgment.  (*See* Docs. 128-129).  After this time, however, Plaintiff purchased Ms. Johnson's rights in the patents-at-issue, which effectively ended the litigation.  Nonetheless, had Defendants purchased

those rights, this case could have proceeded to trial for the Court to resolve the parties' remaining claims. The fact that many of the parties' disputes on the merits were never fully resolved by the Court significantly undercuts any argument that either party's litigating position was far superior or that the case was litigated in an unreasonable manner. *See Octane Fitness*, 134 S. Ct. at 1756.

In sum, evaluating this action based on the totality of the circumstances, the Undersigned cannot recommend a finding that this case is exceptional. The record does not support a finding that this case that stands out from others with respect to the substantive strength of a party's litigating position – legally or factually – or that the case was litigated in an unreasonable manner. *See Octane Fitness*, 134 S. Ct. at 1756. Accordingly, the Undersigned recommends that the present case not be found "exceptional" for purposes of 35 U.S.C. § 285.

## C. Reasonableness of the Fees

The final issue under 35 U.S.C. § 285 is whether the fees requested by Chico's are reasonable. In light of the Undersigned's finding and recommendation that this case is not "exceptional," the Court need not address whether the attorneys' fees sought by Plaintiff are reasonable. Instead, the Undersigned recommends that attorneys' fees not be awarded.

## D. Conclusion for Attorneys' Fees

Although the Undersigned recommends that Plaintiff be found the prevailing party in this litigation, the Undersigned nonetheless recommends that this case not be found "exceptional" under 35 U.S.C. § 285. Accordingly, the Undersigned recommends that attorneys' fees not be awarded in this case and that Plaintiff's Renewed Motion and Memorandum to Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees (Doc. 157) be **DENIED** in its entirety.

### III.     Plaintiff's Renewed Bill of Costs (Doc. 158)

In addition to attorneys' fees, Plaintiff also seeks its costs from the present action.  The Undersigned evaluates Plaintiff's request for costs below.

### A.     Legal Standards

Pursuant to Fed. R. Civ. P. 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  As stated above, Federal Circuit law governs the determination of which party prevailed in patent litigation.  *SSL Services*, 769 F.3d at 1086.  Nonetheless, "[w]hether an award of costs is reasonable is determined under the law of the regional circuit." *Shum*, 629 F.3d at 1370 (citing *Manildra Milling,* 76 F.3d at 1183).  Thus, this Court applies Eleventh Circuit law in determining whether the costs sought by Plaintiff are reasonable.  *See id.* In the Eleventh Circuit, Rule 54(d) establishes a presumption that costs are to be awarded to a prevailing party, but a district judge is vested with discretion to decide otherwise.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc); *see also Smith v. Sec'y, Florida Dep't of Corr.*, 696 F. App'x 944, 954 (11th Cir. 2017).

In looking at what costs are allowed, Congress has comprehensively regulated the taxation of costs in federal courts.  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  Absent statutory language to the contrary, courts are limited to taxing only the costs enumerated in 28 U.S.C. § 1920.  *Id.*  Indeed, while a court has discretion to tax costs enumerated in § 1920, it is nonetheless prohibited from taxing costs that are not enumerated in that statute, absent another basis for awarding costs.  *Id.*

Once the prevailing party has shown the requested costs are allowed, the losing party

must rebut the presumption favoring their award.  *See Manor Healthcare Corp. v. Lomelo*, 929

F.2d 633, 639 (11th Cir. 1991).  Section 1920 provides the following list of taxable costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.  A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

**B.    Analysis**

**1.    Prevailing Party**

As indicated above, the Federal Circuit treats the determination of which party prevailed

under Fed. R. Civ. P 54(d) and 35 U.S.C. § 285 similarly.  *Highway Equipment*, 469 F.3d at

1035.  Because the analysis under Rule 54(d) and 35 U.S.C. § 285 is similar, for the reasons

stated above, the Undersigned recommends that Plaintiff be found the prevailing party.  *See id.*

**2.    Costs**

Having concluded that Plaintiff is the prevailing party, the Undersigned now addresses

whether the costs Plaintiff seeks are reasonable.  *See Chapman*, 229 F.3d at 1038.  Here, Plaintiff

initially sought costs totaling $26,148.65.  (Doc. 158 at 1).  Plaintiff concedes, however, that

deductions totaling $3,109.72 are appropriate.  (Doc. 165 at 10).  Thus, Plaintiff only requests

$23,038.93 in costs.  (*Id.*).  For their part, Defendants argue that many of the costs Plaintiff seeks should be rejected entirely or, in the alternative, should be reduced.  (*See* Doc. 163).  At most, Defendants contend that Plaintiff should recover costs totaling $5,253.97.  (*Id.* at 19).

The Undersigned addresses the parties' arguments regarding costs below.

### i.    Fees of the Clerk

Defendants first argue that the Court should not award costs for the filing fee.  (Doc. 163 at 8).  Nonetheless, 28 U.S.C. § 1920(1) allows the prevailing party to recover the filing fee.  Accordingly, the Undersigned recommends that the filing fee of **$400.00** be taxed against Defendants.

### ii.    Fees for summons and subpoenas

Defendants next object to fees for service of summons and subpoenas.  (Doc. 163 at 8-9).  Specifically, Defendants object to the total amount – $2,583.00 – sought by Chico's, arguing that Chico's has not shown how any of the subpoenas were related to this case.  (*Id.*).  Additionally, Defendants contend that 28 U.S.C. § 1920(1) does not allow for certain costs sought by Plaintiff such as costs resulting from rush service.  (*Id.* at 8).  In the alternative, Defendants argue that Chico's recovery should be limited to $55.00 per subpoena – the rate charged by the United States Marshals service – for a total of $605.00.  (*Id.* at 9).

In response, Plaintiff acknowledges that the documents it provided are not sufficient to establish the mileage or the time its private process servers required to serve the subpoenas.  (Doc. 165 at 5).  As a result, Plaintiff concedes that "limiting service costs at $55/subpoena would not be unreasonable."  (*Id.*).[5]

---

[5]  Currently, it appears the United States Marshals Service charges $65.00 per hour for each item served plus travel costs and any other out-of-pocket expenses.  28 C.F.R. § 0.114(a)(3).

On this point, 28 U.S.C. § 1920(1) allows taxable costs for "[f]ees of the . . . marshal." The Eleventh Circuit has stated that this category of costs includes costs for private process servers in an amount that does not exceed what the United States Marshals Service charges. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). Nonetheless, this Court has indicated that "[i]f a party seeks to recover private service fees without providing evidence of what hourly rate the private server charged, how much time he spent trying to serve process, or other information needed to determine if his rate exceeded that charged by the Marshal, then the appropriate practice is to award the lesser of the amount that the party actually paid and the minimum charge of the U.S. Marshals." *Barfield v. CSX Transportation, Inc.*, No. 3:14-cv-1031-J-PDB, 2017 WL 4077042, at *1 n.3 (M.D. Fla. Sept. 14, 2017) (quoting *Oleksy v. Gen. Elec. Co.*, No. 06-cv-1245, 2016 WL 7217725, at *3 (N.D. Ill. Dec. 12, 2016) (internal quotation marks omitted)).

Here, the Undersigned finds that the Plaintiff's costs associated with using private process servers are recoverable. *See W&O*, 213 F.3d at 624. As acknowledged by Plaintiff, however, Chico's failed to provide specific information regarding mileage and time spent by its private process servers. In light of this deficiency and given the parties' agreement that the relevant minimum charged by the United States Marshal is $55.00, the Undersigned recommends that fees related to subpoenas be limited to $55.00 per subpoena. In this case, there were eleven (11) subpoenas. (Doc. 157-1 at 7-17). Thus, the Undersigned recommends that costs of subpoenas be taxed against Defendants in the amount of **$605.00**.

---

Nonetheless, because the parties agree that the relevant minimum charged by the United States Marshal is $55.00, the Undersigned accepts the parties' number.

iii.    *Fees for printed or electronically recorded transcripts necessarily obtained for use in the case*

Next, Defendants argue that Plaintiff is not entitled to the amount of costs it seeks related to depositions.  (Doc. 163 at 9-13).  Instead of the $13,219.63 sought by Plaintiff, Defendants argue that Plaintiff should recover only $3,257.45.  (*Id.* at 9).  In response, Plaintiff argues that it should recover all of the costs sought.  (Doc. 165 at 13).

The Eleventh Circuit has indicated that "[t]axation of deposition costs is authorized by § 1920(2)."  *W&O, Inc.*, 213 F.3d at 620 (citation omitted).  The question of whether the costs for a deposition are taxable, however, depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in the case.  *Id.* (quotation marks and citations omitted).

As an initial matter, Defendants argue that Plaintiff has not shown that the taxation of deposition costs are permitted under § 1920(2) because, they contend, Plaintiff has not shown that the depositions were necessarily obtained for use in the case.  (Doc. 163 at 10).  As stated above, however, once the prevailing party has shown the requested costs are allowed, the losing party must rebut the presumption favoring their award.  *See Manor Healthcare*, 929 F.2d at 639.  Here, Plaintiff has adequately shown that its deposition costs are taxable under § 1920.  As such, the burden shifts Defendants to rebut the presumption favoring the award.  Defendants have not done so.  Thus, the Undersigned declines to recommend a finding that none of the depositions are taxable under § 1920 on the basis that the depositions were not necessarily obtained for use in the case.  Notwithstanding this conclusion, however, the Undersigned specifically addresses specific line-item costs associated with the depositions disputed by Defendants.

For example, Defendants take issue with the fact that Plaintiff noticed some of the depositions as video depositions, arguing that these costs should not be taxed.  (Doc. 163 at 10-

11).  On this point, however, "[w]here a party notices a deposition to be recorded by both stenographic and non-stenographic means, and no objection is raised at that time as to the method of recordation, pursuant to Fed. R. Civ. P. 26(c), a court can award the cost of conducting the deposition in the manner noticed."  *Watson v. Lake Cty.*, 492 F. App'x 991, 997 (11th Cir. 2012).  Here, there is no indication that Defendants objected to the taking of video depositions.  Thus, the costs associated with conducting video depositions are properly taxable.  *See id.*

Next, Defendants argue that Plaintiff is not entitled to recover costs for multiple copies of deposition transcripts.  (Doc. 163 at 10-13).  In response, Plaintiff contends that they only paid for originals but, in addition, were provided courtesy copies of deposition transcripts.  (Doc. 165 at 8).  In support, Plaintiff points to the fact that there is no separate line item for the additional courtesy copies.  (*Id.*).  For this issue, Defendants are correct that, while the cost of deposition transcripts are generally recoverable, multiple copies are generally not recoverable.  *Meidling v. Walgreen Co.*, No. 8:12-CV-2268-T-TBM, 2015 WL 12838340, at *4 (M.D. Fla. June 19, 2015) (citing *Barrera v. Weiss & Woolrich S.*, 900 F. Supp. 2d 1328, 1335 (S.D. Fla. 2012)).  Upon review of the submissions, however, Plaintiff appears to have paid only for original deposition transcripts, not the courtesy copies.  (*See* Doc. 165 at 8).  The invoices submitted by Plaintiff, indeed, show only a single line item for the cost of the transcripts with no itemization for copies. (*See, e.g.*, Doc. 158-1 at 23).  As a result, although Plaintiff received more than one copy of the various deposition transcripts, the Undersigned declines to recommend that the costs for deposition transcripts be reduced.

Next, Defendants argue that Plaintiff should not recover the costs for expediting transcripts.  (Doc. 163 at 10-13).  In response, Plaintiff argues that such costs are permissible

when there is a legitimate need.  (Doc. 165 at 8 (citation omitted)).  Here, Plaintiff argues that it needed a rough draft of Ms. Clair's deposition quickly because time was of the essence in seeking leave to amend.  (*Id.*).  Similarly, Plaintiff argues that it needed Mr. Falconer's deposition transcripts quickly because of quickly approaching *Daubert* deadlines.  (*Id.* at 8-9).  On this point, when costs associated with expedited transcripts are incurred for the convenience of counsel, such costs are not taxable.  *Meidling*, 2015 WL 12838340, at *4 (citations omitted).  Nonetheless, Plaintiff is correct that costs for expedited transcripts are allowed if expediting them was necessary.  *See Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225-26 (11th Cir. 2002).  Here, Plaintiff has shown that expediting transcripts was necessary under the circumstances to meet court deadlines and to address matters promptly with the Court.  The Undersigned, therefore, declines to recommend a reduction in taxable costs on the basis that transcripts were expedited.  As explained below, however, the costs associated with obtaining rough drafts of transcripts are not taxable for other reasons.

Next, Defendants argue that Plaintiff should not recover appearance fees for court reporters.  (Doc. 163 at 10-13).  Plaintiff disagrees.  (Doc. 165 at 7-8).  On this issue, there is some dispute over whether a court reporter's appearance fee is taxable.  *Compare Barfield*, 2017 WL 4077042, at *1 n.4 (taxation not allowed), *Frost v. McNeilus*, No. 8:14-CV-81-T-24 MAP, 2015 WL 1730244, at *2 (M.D. Fla. Apr. 14, 2015) (taxation allowed).  Upon an independent review of this issue, it makes little sense to the Undersigned to exclude appearance fees of court reporters when court reporters are necessary to conduct depositions.  Absent any controlling prohibition against taxing such costs, the Undersigned recommends that the court reporters' appearance fees sought by Plaintiff be taxed against Defendants.

Of note, however, there is a $150.00 stand-alone appearance fee for Ben Clark.  (Doc. 158-1 at 25).  The purpose of this appearance fee is not clear, and Plaintiff did not elaborate.  Without additional information, the Undersigned recommends that this unexplained cost not be taxed against Defendants.

As a final matter, Defendants contest various other costs such as the costs of rough drafts, ASCII drafts, condensed transcripts, and shipping costs.  (Doc. 163 at 10-13).  On this point, this Court has previously stated that shipping costs are not taxable, nor are the costs associated with condensed transcripts, ASCII, electronic transcripts, rough drafts, shipping and handling, or digitizing and synchronizing video depositions.  *Meidling*, 2015 WL 12838340, at *4 (citations omitted).  Here, it appears that Plaintiff seeks some of these non-taxable costs.  Specifically, for Andrea Clair's deposition, there is a $16.00 charge for a condensed transcript, (Doc. 158-1 at 23), and a $615.00 charge for a "Rough ASCII," (*id.* at 27).  As to Adam Falconer, there is a $420.00 charge for a "Rough Draft ASCII," a $6.00 charge for delivery, (*id.* at 24), and also a $30.00 handling fee, (*id.* at 37).  As to Beverly Johnson, there is a charge of $515.00 for a "Rough ASCII," (*Id.* at 32), and a $25.00 shipping charge related to her video deposition, (*id.* at 34).  As to Justin Lewis, there is a $21.00 delivery charge.  (*Id.* at 33).  As to Karin Yngvestdotter, there is a $105.00 charge for a summary.  (*Id.* at 35).  These costs total $1,753.00.  The Undersigned finds that these costs are not taxable.  Accordingly, the Undersigned recommends a reduction in taxable costs in the amount of $1,753.00.

In sum, the Undersigned recommends that costs related to depositions be taxed against Defendants in the amount of **$11,316.63**, which is the amount of $13,219.63 sought by Plaintiff less non-taxable costs totaling $1,903.00.

*iv.*     *Fees for disbursements and printing*

Next, Defendants contest fees for disbursements and printing.  (Doc. 163 at 13-14).
Defendant argues that the costs – totaling $2,694.60 – Plaintiff seeks to recover for printing
should not be permitted because Plaintiff has not shown how the costs are necessary within the
meaning of § 1920.  (*Id.*).  In response, Plaintiff argues that the costs it seeks for printing were
those fees paid to "third party vendors that prepared documents to be produced pursuant to Rule
26."  (Doc. 165 at 9).  In addition, Plaintiff states that $1,380.00 of the costs is "associated with
the preparation of video deposition testimony submitted for the Court in support of Chico's
motion for summary judgment."  (*Id.*).  Thus, Plaintiff argues that these costs "are properly
taxed, whether in the category of transcription or exemplification" because "there is no question
these videos were for use in the case and were specifically submitted for use in summary
judgment." (*Id.*).

On this point, § 1920 allows for fees from printing and fees for exemplification and the
costs of making copies of any materials where the copies are necessarily obtained for use in the
case.  28 U.S.C. § 1920(3)-(4).  In particular, "'[c]opies attributable to discovery' are a category
of copies recoverable under § 1920(4)."  *W&O*, 213 F.3d at 623.

First, Plaintiff seeks $15.36 for printing from FedEx.  (Doc. 158-1 at 3).  Upon
consideration, these printing costs appear to be properly taxable under § 1920(3).

Next, Plaintiff seeks costs relating to three separate charges from Professional Litigation
Support, LLC in the amounts of $137.20, $545.00, and $1,380.00 for scanning certain
documents, processing images, and labor related to video depositions.  (Doc. 158-1 at 40-42).
Upon review, it is not entirely clear whether these costs are for printing, fees for exemplification
and costs of making copies or, perhaps, the costs of transcripts.  Regardless, these costs appear to

be taxable under at least one category.  *See* 28 U.S.C. § 1920(2)-(4).  Thus, the Undersigned recommends that these costs be taxed against Defendants.

Notwithstanding this conclusion, within the invoices from Professional Litigation Support, LLC, the Undersigned notes three line-item charges – in the amounts of $15.00, $25.00, and $70.00 – for duplicate CDs or duplicate DVDs.  (*Id.*).  As explained above relating to depositions, multiple copies are typically not permitted.  The Undersigned recommends, therefore, that these duplicate costs – totaling $110.00 – not be taxed against Defendants. Otherwise, the Undersigned recommends that the remaining balance of **$2,584.60** be taxed against Defendants.

> v.    *Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case*

Section 1920(4) allows for fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.  28 U.S.C. § 1920(4). Here, the parties agree that the full amount of costs sought by Plaintiff for this category – totaling $1,007.25 – are taxable costs.  (*See* Doc. 163 at 15; Doc. 165 at 9).  Because the parties agree, the Undersigned recommends that **$1,007.25** be taxed to Defendants for fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.  *See* 28 U.S.C. § 1920(4).

> vi.    *Other costs*

Finally, Defendants contest the "other costs" sought by Plaintiff.  (Doc. 163 at 15-18). For a variety of reasons, Defendants contend that Plaintiff should only receive $384.27 in other costs rather than the total amount of $6,244.17 Plaintiff seeks.  (*Id.* at 18).  In response, Plaintiff

concedes that certain costs are non-taxable but, nonetheless, contends that it should still recover $5,112.45 in costs.  (Doc. 165 at 10).

As an initial matter, in evaluating the other costs sought by Plaintiff, Defendants concede that the costs associated with the travel and lodging of Beverly Johnson are recoverable costs.  (Doc. 163 at 17).  Indeed, witness fees are recoverable pursuant to § 1920(3).  *See Barfield*, 2017 WL 4077042, at *1 n.5.  As a result, the Undersigned recommends that these costs, totaling $384.27, be taxed against Defendants.  *See id.*

The remainder of the "other costs" sought by Plaintiff include the costs associated with legal research, mailing costs, and the travel and lodging costs of its counsel.  (*See* Doc. 158-1).  Upon review, however, the Undersigned recommends that these costs not be taxed against Defendants because Plaintiff's request is either (1) not recoverable under 28 U.S.C. § 1920 or (2) Plaintiff has failed to provide the requisite specificity.  *See Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 845-46 (11th Cir. 2008).

First, Plaintiff concedes that the legal research and express mailing costs are not recoverable.  (Doc. 165 at 10 (citing *Gary Brown*, 268 F. App'x at 846)).  Indeed, Plaintiff is correct that these costs are not included under § 1920.  *See Gary Brown*, 268 F. App'x at 846.  Because these costs are not recoverable, the Undersigned recommends that Plaintiff's legal research and express mailing costs not be taxed against Defendants.

As to the costs Plaintiff seeks associated with the travel and lodging expenses of its counsel, the Undersigned notes that Plaintiff cited no authority in support of its position that these expenses are recoverable under § 1920.  Furthermore, the underlying documentation provided by Plaintiff does not specify why these expenses were incurred.  Here, because Plaintiff failed to show why these expenses are recoverable and also failed to provide the requisite

specificity, the Undersigned recommends that Plaintiff's "other costs" for travel and lodging of its counsel not be taxed against Defendants.  *See Gary Brown*, 268 F. App'x at 846.

In sum, the Undersigned recommends that other costs, totaling **$384.27**, be taxed against Defendants.

### C.     Conclusion for Costs

Because Plaintiff is the prevailing party, it is entitled to costs in this action.  For the reasons explained above, the Undersigned recommends that costs be taxed against Defendants in the amount of **$16,297.75**.

## IV.   Conclusion

For the reasons explained above, the Undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff Chico's FAS, Inc.'s Renewed Motion and Memorandum to Find this Case Exceptional and Award Chico's Reasonable Attorneys' Fees (Doc. 157) be **DENIED** but that costs be taxed against Defendants in the amount of $16,297.75.

Respectfully recommended in Chambers in Fort Myers, Florida on January 25, 2018.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties